1   McCARTHY, JOHNSON & MILLER
         LAW CORPORATION
2   LORI A. NORD, ESQ., #87993
    595 Market Street, Suite 2200
3   San Francisco, CA  94105
    Telephone:  (415) 882-2992
4   Facsimile:  (415) 882-2999
    E-mail:     lnord@mjmlaw.us
5
    Attorneys for Plaintiffs
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  BOARD OF TRUSTEES OF THE U.A. LOCAL   ) No.  **CV 08 2122 SC**
    NO. 355 HEALTH AND WELFARE TRUST      )
12  FUND; BOARD OF TRUSTEES OF THE U.A.   ) **DECLARATION OF LORI A. NORD**
    LOCAL NOS. 343 AND 355 DEFINED        ) **REGARDING STATEMENT OF**
13  CONTRIBUTION PLAN; BOARD OF TRUSTEES  ) **AMOUNTS OWED, AND AWARD OF**
    OF THE NORTHERN CALIFORNIA/NORTHERN   ) **ATTORNEY'S FEES**
14  NEVADA UTILITY JOURNEYMAN AND         ) **(F. R. C. P. 55 (b)(2),**
    APPRENTICE TRAINING TRUST FUND; AND   ) **L.R. 230)**
15  BOARD OF TRUSTEES OF THE U.A. LOCAL   )
    NO. 355 LABOR-MANAGEMENT COOPERATION  ) **Date:  October 3, 2008**
16  COMMITTEE TRUST FUND,                 ) **Time:  10:00 a.m.**
                                          ) **Place: Courtroom 1**
17                 Plaintiffs,            )        **17th Floor**
                                          )
18       v.                               )
                                          )
19  IMAGE LANDSCAPE, INC.,                )
                                          )
20                 Defendant.             )
                                          )
21  _____ )

22

23       I, LORI A. NORD, declare as follows:

24       1.  I am one of the attorneys for the plaintiffs in the above-

    entitled action and am familiar with all proceedings in this action
25
    and am familiar with all proceedings in this action as well as the
26
    facts on which the action is based.
27
         2.  Our firm drafts and maintains the original trust documents
28

1  for plaintiffs.  Attached hereto as Exhibit "A," "B," "C", "D" and

2  "E" are true and correct copies of the U.A. Local No. 355 Health and

3  Welfare Trust Agreement (Exhibit A - see Article III, Section 3.06);

4  the First Amendment to the U.A. Local No. 343 Pension Trust Fund

5  Trust Agreement (Exhibit B); the U.A. Local No. 343 Pension Trust

6  Fund Agreement (Exhibit C - see Article III, Section 3.07), the

7  Northern California and Northern Nevada Landscape and Underground

8  Utility Journeyman and Apprenticeship Training Trust Fund Trust

9  Agreement (Exhibit D - See Article II, Section 2.7) and the U.A.

10 Local No. 355 Labor-Management Cooperation Committee Trust Fund Trust

11 Agreement (Exhibit E - See Article II, Section 2.8).  These provi-

12 sions provide for the assessment of liquidated damages and interest

13 on delinquent contributions and for the award of attorneys' fees and

14 costs incurred in collection cases such as these by plaintiffs.  The

15 Pension Trust Agreement also covers the Defined Contribution Plan.

16    3.  Our office maintains an archive of our clients' collective

17 bargaining agreements.  Attached hereto as Exhibits "F", "G" and "H"

18 are true and correct copies of the subcontract provisions of the U.A.

19 Local No. 355 Collective Bargaining Agreements in effect for the

20 audit period of January 1, 2004 through August 31, 2006. See

21 paragraph 18 of each agreement for the sod work covered by the

22 Agreement and paragraph 19 of each agreement concerning subcontract-

23 ing rule.

24    4.  I have investigated the facts of this case and certify that

25 there is a good claim for relief against defendant.  To the best of

26 my information and belief, defendant Image Landscape, Inc., is not in

27 the military service of the United States.

28

5.    As of June 20, 2008, the defendant owed plaintiffs $166,041.85 in fringe benefits, liquidated damages and interest. (See Complaint).  Interest continues to accrue on that sum from June 20, 2008 until paid at the rate of twelve percent (12%) per annum, or $54.59 per day, under the terms of the Trust Agreements and as mandated by 29 U.S.C. §1132(g)(2).  The interest which will have accrued on that sum through October 3, 2008 is $5,731.95, making the total due as of October 3, 2008 $171,773.80

6.    Plaintiffs have incurred the following costs in connection with this lawsuit:

| | | |
|---|---|---|
| Court filing Fee | : | $350.00 |
| Deliveries to Court 4/08 | | 26.40 |
| Deliveries to Court 5/08 | | 26.40 |
| Fee for service of Complaint | : | 75.00 |
| | TOTAL: | $477.80 |

Additionally, plaintiffs paid $20,944.00 for the audit fee (See Exhibits 13 and 14 of the Amended Complaint).

7.    Plaintiffs have also incurred, and are continuing to incur attorneys' fees in connection with the collection of fringe benefits owed by defendant.  Attorneys' fees are assessable under 29 U.S.C. §1132(g), which requires award of reasonable award of reasonable attorneys' fees and costs of the action to a trust fund or employee benefit plan which has a judgment in its favor.

8.    I was admitted to practice in 1979, and have handled cases involving fringe benefit contributions since April 1980.  Diane Sidd-Champion was admitted to practice in 1977 and has handled these types of cases since 1986.  My firm's current customary hourly charge for

1   these types of cases is currently $240.00 - $250.00 per hour for our

2   attorney time.  Our Paralegal, Eric Schad, has been employed by us

3   since 1986.  We bill $105.00 per hour for his services.

4       9.  Plaintiffs were or will be billed $240.00 an hour for 21.4

5   hours of attorney time and .7 paralegal time for our services

6   regarding this case through August 27, 2008.  Plaintiffs have or will

7   be billed a total of $5,209.50 for fees for service incurred through

8   August 27, 2008. This time was incurred in communications and

9   correspondence with defendant, clients, auditor, and Court as well as

10  drafting all pleadings in the case.  Attached hereto as Exhibit I is

11  a true and correct summary of our services.  The reasonable amount of

12  attorneys' fees incurred by Plaintiff in this case is thus $5,209.50

13      I declare under penalty of perjury that to the best of my

14  knowledge the foregoing is true and correct.  Executed on August 27,

15  2008 in San Francisco, California.

16

17                          By: _____/s/_____
                                LORI A. NORD
18                              Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

DECLARATION OF LORI A. NORD REGARDING STATEMENT                    Page 4
OF AMOUNTS OWED, AND AWARD OF ATTORNEY'S FEES

## U. A. LOCAL NO. 355 HEALTH AND WELFARE TRUST FUND
### TRUST AGREEMENT

WHEREAS U.A. Local No. 355 (hereinafter the Union) is the collective bargaining representative of employees in the landscape irrigation installation and utility pipeline fitting and installation industries in its geographical jurisdiction, and

WHEREAS the Union has made and will make collective bargaining agreements with the Mechanical and Engineering Contractors Association and the Landscape Contractors Association of Northern California (hereinafter the Associations) and

WHEREAS those collective bargaining agreements require contributions to a trust fund for the purpose of providing health and welfare benefits to employees performing covered employment and to their eligible dependents, and

WHEREAS the Union and the Associations have agreed to form a Health and Welfare Trust Fund for the purpose of providing health and welfare benefits to employees performing covered employment and to their eligible dependents, and to other employees as may be authorized by the Trustees;

SO IT IS NOW HEREBY AGREED that the U. A. Local No. 355 Health and Welfare Trust Fund Trust Agreement is hereby adopted by the parties, to read in its entirety as follows.



Exhibit ___ A

# TABLE OF CONTENTS

**SECTION**                                                                    **PAGE**

ARTICLE I - DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.01   AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.02   TRUST FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.03   EMPLOYER ASSOCIATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.04   UNION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.05   COLLECTIVE BARGAINING AGREEMENT  . . . . . . . . . . . . . . .   1
   1.06   EMPLOYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.07   EMPLOYEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.08   FUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.09   TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.10   CO-TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.11   HEALTH AND WELFARE PLANS . . . . . . . . . . . . . . . . . . . . . . .   1
   1.12   EMPLOYER CONTRIBUTIONS . . . . . . . . . . . . . . . . . . . . . . . . .   1
   1.13   ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ARTICLE II - GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.01  Establishment of the Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.02  Purposes of the Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.03  Assets of the Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.04  Title to the Assets of the Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.05  Independence of the Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
   2.06  Non-Liability of the Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
   2.07  Reliance on the Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
   2.08  Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
   2.09  Principal Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
   2.10  Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
   2.11  Confidentiality of Trust Fund Documents . . . . . . . . . . . . . . . . . . . . .   4

ARTICLE III - EMPLOYER CONTRIBUTIONS . . . . . . . . . . . . . . . . . . . . .   4
   3.01  Liability of Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
   3.02  Scope of Employer Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
   3.03  Credit or Refunds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
   3.04  Union and Related Entities as Employers . . . . . . . . . . . . . . . . . . . . .   5
   3.05  Due Date and Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
   3.06  Liquidated Damages and Interest  . . . . . . . . . . . . . . . . . . . . . . . . . .   5
   3.07  Actions to Collect Delinquent Obligations . . . . . . . . . . . . . . . . . . . . .   6

ARTICLE IV - BOARD OF TRUSTEES . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
   PART I  GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
   4.1.01  Administration by the Board of Trustees . . . . . . . . . . . . . . . . . . . .   6
   4.1.02  Selection of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
   4.1.03  Selection of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
   4.1.04  Term of Office of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

**SECTION**                                                                                          **PAGE**

4.1.05  Resignation of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
4.1.06  Filling of Vacancies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
4.1.07  Acting Despite a Vacancy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
4.1.08  Notice of Changes in Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
4.1.09  Compensation of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
PART II  PROCEDURE OF THE BOARD OF TRUSTEES  . . . . . . . . . . .   8
4.2.01  Acting only as a Body . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
4.2.02  Calling of Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.2.03  Quorum  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.2.04  Voting Procedures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
PART III  ARBITRATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.3.01  Resolution of Deadlocks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.3.02  Designation of an Arbiter  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.3.03  Effect of Further Deadlock  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
4.3.04  Procedure for Arbitration  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
4.3.05  Reimbursement of Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
4.3.06  Power of the Arbiter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
4.3.07  Finality of Decisions of the Arbiter . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
PART IV  DUTIES AND POWERS OF TRUSTEES  . . . . . . . . . . . . . . .   10
4.4.01  Adoption of Health and Welfare Plans  . . . . . . . . . . . . . . . . . . . . . . . .   10
4.4.02  Finality of Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
4.4.03  Accounting of the Trust  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
4.4.04  Auditing of Employer Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . .   11
4.4.05  Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
4.4.06  Selection of an Administrator  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
4.4.07  Selection of a Co-Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
4.4.08  Designated Powers of the Board of Trustees . . . . . . . . . . . . . . . . . . . .   13
4.4.09  Reciprocity Agreements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
4.4.10  Addition of Participants Not Represented by the Union  . . . . . . . . . .   15
4.4.11  General Powers of the Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
PART V - LIABILITY OF TRUSTEES  . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
4.5.01  Standard of Care  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
4.5.02  Scope of Trustee Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
4.5.03  Non-Liability of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
4.5.04  Return of Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

ARTICLE V - EXECUTION AND AMENDMENT OF THE AGREEMENT . . . .   16
5.01  Obligations of Parties and Successors . . . . . . . . . . . . . . . . . . . . . . . . . .   16
5.02  Power to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
5.03  Termination of the Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
5.04  Distribution of Assets on Termination . . . . . . . . . . . . . . . . . . . . . . . . . .   17

## ARTICLE I - DEFINITIONS

1.01    AGREEMENT means this Trust Agreement.

1.02    TRUST FUND or Trust means this U. A. Local No. 355 Health and Welfare Trust Fund.

1.03    EMPLOYER ASSOCIATIONS or ASSOCIATIONS means the Mechanical and Engineering Contractors Association or its successor, and the Landscape Contractors Association of Northern California or its successor.

1.04    UNION means Local Union No. 355 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, or its successor.

1.05    COLLECTIVE BARGAINING AGREEMENT means any agreement in writing between the Union and one or more Associations, or the Union and an individual employer not represented by an Association, covering wages, fringe benefits contributions, or other conditions of employment of employees in the landscape irrigation installation and utility pipeline fitting and installation industries.

1.06    EMPLOYER or INDIVIDUAL EMPLOYER means any employer required to make contributions to the Trust Fund in accordance with a Collective Bargaining Agreement with the Union, or the heirs, executors, administrators, successors, purchasers, and assignees of such an Employer; or any such person or entity who or which makes contributions to the Trust Fund; or the Union or a related organization, to the extent that it may contribute on behalf of its employees, agents and representatives, pursuant to Section 3.04 of this Agreement.

1.07    EMPLOYEE means any person who performs or has performed work covered under a Collective Bargaining Agreement between an Employer and the Union, for whom the Employer is obligated to make a contribution to the Trust Fund; or any qualified employee, agent or representative of the Union or a related organization which is participating herein as an Employer pursuant to Section 3.04 of this Agreement.

1.08    FUND means all of the assets of whatever kind which comprise the property of the Trust Fund.

1.09    TRUSTEE means any person designated as Trustee, pursuant to Article IV below. The term "Board of Trustees" means the Trustees acting collectively as a body as trustees for the Trust Fund.

1.10    CO-TRUSTEE means the Co-Trustee selected by the Board of Trustees pursuant to Section 4.4.07 below.

1.11    HEALTH AND WELFARE PLANS and Plans mean the plan or plans relating to the distribution of health and welfare benefits pursuant to Section 4.4.01 below, including any amendments, alterations or modifications thereof, adopted by the Board of Trustees.

1.12    EMPLOYER CONTRIBUTIONS means any payments made to the Trust Fund by an Employer pursuant to a Collective Bargaining Agreement with the Union, or by the Union in accordance with Section 3.04 of this Agreement.

1.13    ERISA means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq.

## ARTICLE II - GENERAL PROVISIONS

2.01  Establishment of the Fund

There is hereby created the U. A. Local No. 355 Health and Welfare Trust Fund, a trust fund for the uses and purposes herein set forth. The Board of Trustees, and only the Board of Trustees, may use the name "U.A. Local No. 355 Health and Welfare Trust Fund" to designate the Trust Fund or the Board of Trustees collectively in all transactions of, and on all documents of, the Trust Fund.

2.02  Purposes of the Fund

The Trust Fund is established solely for the benefit of the Employees and their families and dependents, for the purpose of providing health and welfare benefits to Employees or their qualified beneficiaries, and for no other purpose. The Trust Fund may provide benefits through a contract or contracts with, or a policy or policies issued by one or more licensed insurance carriers, or by means other than such contracts or policies, including, without limitation, direct payment of benefits to Employees or to providers of covered services or supplies from the Fund in accordance with a Health and Welfare Plan. Notwithstanding the right of qualified Employees to receive such benefits, no Employee or member of an Employee's family shall be entitled to receive a distribution of the assets of the Trust except as provided in Health and Welfare Plan of the Fund, or to receive any part of a payment required to be made to the Fund in lieu of benefits provided under a Plan.

2.03  Assets of the Fund

The Fund shall consist of all Employer Contributions, all investments made and held in the Trust Fund and all income therefrom, and any other property acquired, received or held by reason of this Agreement for the benefit of the Trust Fund.

2.04  Title to the Assets of the Fund

The entire right, title and interest to the Trust Fund is vested in the Board of Trustees. Neither the Board of Trustees nor any individual Trustee shall have powers, duties or liabilities with respect to the Trust Fund except as specified in this Agreement. Except as provided in a Collective Bargaining Agreement, the rights and duties of the Associations, the Union, the Individual Employers, the Employees and their beneficiaries, with respect to the provision of health and welfare benefits to participants and beneficiaries, shall be governed by this Agreement, by the Health and Welfare Plan(s), and by the actions of the Board of Trustees. In the case of a dispute as to the rights of any person as to eligibility for, type of, amount of or any other aspect of a benefit provided by the Fund, the decision of the Board is final.

2.05  Independence of the Trust Fund

Except as provided in this Agreement or in the Health and Welfare Plans, neither the Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, nor any other person or entity shall have any right, title or interest with respect to the assets of the Trust Fund; nor shall they be liable for any debts, liabilities or obligations of the Trust Fund, including those obligations

which may arise from the failure to pay a benefit under the Health and Welfare Plans. Furthermore, no part of the Fund shall revert to any Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, or any other person or entity, except as specifically provided in this Agreement. However, nothing herein shall be construed to prevent the Trustees from contracting with a party-in-interest for services in connection with the administration of the Health and Welfare Plans, to the extent permitted under Section 408(b) of ERISA.

2.06  Non-Liability of the Trust Fund

No asset of the Fund shall be liable in any manner for, or subject to, the debts of the Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, or any other person or entity. No part of the Fund, nor any benefits payable in accordance with the Plans, shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person or entity, except as required by the laws of the United States. However, the Board of Trustees may permit Employees or their dependents to assign the right to benefits to a provider or services or supplies so that the provider may be paid directly from the Fund for covered services or supplies.

2.07  Reliance on the Trust Fund

No person or entity that has verified that he, she or it is dealing with the duly appointed Board of Trustees, or any authorized representative of them, shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Agreement have been observed, or to inquire as to the necessity or expediency of any act of the Board of Trustees. Every instrument executed by the Board of Trustees or at their direction shall be conclusive in favor of every person who relies on it, that:

    (a)    at the time of the delivery of the instrument this Agreement was in full force and effect;

    (b)    the instrument was executed in accordance with the terms and conditions of this Agreement; and

    (c)    the Board of Trustees were duly authorized to execute the instrument or direct its execution.

2.08  Governing Law

The interpretation of this Agreement and of the Health and Welfare Plans shall be governed by the laws of the United States to the extent applicable and otherwise under the laws of the State of California. This Agreement and the Plans shall be construed to be in accordance with those laws if at all possible. In the event that any section of this Agreement or any part thereof becomes illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Agreement unless such illegality or invalidity prevents the Board of Trustees from accomplishing the purposes of the Trust Fund, at which time the parties shall take steps to amend this Agreement to eliminate the illegality or invalidity. If any part of the Health and Welfare Plans or any aspect of their administration

is determined to be illegal or invalid, the Board of Trustees shall take whatever action is necessary to remedy that illegality or invalidity.

### 2.09 Principal Office

The Board of Trustees shall have the power to establish and move the principal office of the Trust Fund to such locations within the State of California as it sees fit.

### 2.10 Notice

Any notice required to be given under the terms of this Agreement shall be deemed to have been duly given if delivered personally to the person or organization to be notified, or if sent by telegraph or certified mail to such person or organization at his, her or its last known address as shown in the records of the Board of Trustees.

### 2.11 Confidentiality of Trust Fund Documents

Except as necessary for the proper administration of the Trust Fund and the Health and Welfare Plans, all documents and information in the possession of the Trust Fund are confidential, and shall not be made public or used for any purpose except as the Board of Trustees may find necessary to, or useful in, the administration of the Trust Fund or of the Health and Welfare Plans. This provision shall not be construed to prohibit any Trustees from examining documents of the Trust Fund, or to prohibit the preparation and publication of statistical data and summary reports as required by law, or to prohibit delivery of copies of the minutes of the meetings of the Board of Trustees to the individual Trustees, or to the Union for the information of its members.

## ARTICLE III - EMPLOYER CONTRIBUTIONS

### 3.01 Liability of Employers

Each Employer shall contribute to the Fund, for the benefit of each covered Employee, such sums of money as shall be required by Collective Bargaining Agreements with the Union, by this Agreement, and by such regulations of the Board of Trustees as are not inconsistent with this Agreement. The payment of money by an Employer to an Employee as an attempt to create a substitute for the payment of contributions to this Trust Fund shall not relieve the Employer of any obligation to this Trust Fund.

### 3.02 Scope of Employer Liability

Neither the Individual Employers, nor the Associations, nor any officer or member of an Association, shall be liable for the debts of any other Employer or Association. However, if any Individual Employer joins with one or more employers which are not Individual Employers under this Agreement, to perform work covered under the Individual Employer's Collective Bargaining Agreement, that Individual Employer shall be liable for the payment of contributions to this Trust Fund as though all the employees of all the employers so joined were employees of the Individual Employer.

### 3.03 Credit or Refunds

Any Employer shall be entitled to credit for or refund of money paid to the Trust by reason of clerical or administrative error as to the amount owed to the Trust Fund, if that Employer has no unpaid obligations to the Trust Fund, to the extent permitted by law and to the extent that such refunds do not adversely affect the actuarial soundness or administration of the Plans. The Board of Trustees may prescribe reasonable regulations as to the time for filing requests for refunds and the manner or procedure for making credits or refunds.

### 3.04 Union and Related Entities as Employers

The Union and related entities shall be considered Employers under this Agreement solely for the purpose of permitting the Union and the related entities to contribute to the Fund on behalf of certain of their employees, so that those employees may be participants in the Health and Welfare Plans. Such Employees shall be limited to those persons who perform paid work for the Union or a related entity as employees, agents or representatives. A related entity means any labor organization, apprenticeship training school, or similar organization, which the Trustees determine, in their sole discretion, to be affiliated or associated with the Union, and which executes a subscription agreement with the Trust Fund, which describes the terms under which contributions are to be made to this Trust Fund. In this capacity as Employer, the Union and the related entities shall have no rights, privileges or powers as an Employer under the Agreement or the Health and Welfare Plans, except to make contributions pursuant to Section 3.01, or to receive credit pursuant to Section 3.03. If any situation shall arise in which the rules of the Health and Welfare Plans are not applicable to the Union and their Employees, then the Board of Trustees shall have the power to make appropriate rules and regulations with respect to the Union, the related entities, and their Employees, provided that such rules and regulations are not inconsistent with the Health and Welfare Plans or this Agreement.

### 3.05 Due Date and Reports

Employer Contributions for the hours worked by the covered Employees of each Employer shall be due and payable at such times and in such form as directed by the Board of Trustees, consistent with the provisions of the Employer's Collective Bargaining Agreement. Each monthly contribution shall be accompanied by a report on such forms as the Board of Trustees shall reasonably require. If an Individual Employer has no Employees during a month, the Board may require the Employer to submit a monthly remittance report, informing the Trust Fund that it had no Employees for that month.

### 3.06 Liquidated Damages and Interest

Insofar as the regular and prompt payment of Employer Contributions are concerned, the parties recognize that time is of the essence. The parties further recognize that the actual damages to the Trust Fund for any delay in, or default of, an Employer in making an Employer Contribution would be extremely difficult, if not impossible, to determine. The parties therefore agree that if an Employer fails to make an Employer Contribution on or before the due date established by the Trustees, there shall be added, as liquidated damages, and not as a penalty, 10% of the Contributions due, or $200, whichever is greater, due and payable on the date that the Contributions were due. In addition, all late contri-

butions and liquidated damages shall bear interest at a rate of 12% per annum, from the date each was due, until paid. The Employer shall remain liable for the payment of the liquidated damages and interest, even if it makes late full payment of the required fringe benefit contributions, unless waived by the Board of Trustees.

The parties further agree that if the Trust Fund files a legal action to collect unpaid Contributions or unpaid liquidated damages, the liquidated damages for any Contributions still unpaid on the date the legal action is filed shall be increased to 20% of the contributions due. For any late Contribution to be deemed paid prior to the filing of a legal action, the Trust Fund must have received cash, a cashier's check, a certified check, or a money order, or, in the case of an ordinary check, received actual payment into the Trust Fund's account from the Employer's bank by the end of the last business day before the day on which the lawsuit is filed. This Section shall supersede any provision in a Collective Bargaining Agreement permitting the collection of any amounts in excess of the amount permitted under this Section.

In addition to the foregoing, it shall not be a violation of any Collective Bargaining Agreement for the Union to refuse to man a job or to withdraw employees from the job or jobs of a delinquent Individual Employer.

3.07  Actions to Collect Delinquent Obligations

If any Employer is delinquent in the making of Employer Contributions or the payment of any other obligations to the Trust, the Board of Trustees may take such legal or other action as they see fit to enforce collection. In such event, the Employer shall be liable for all reasonable expenses incurred by the Board of Trustees in taking such action, including but not limited to: all reasonable expenses incurred in preparation for a lawsuit, including accounting fees; all legal costs, including court costs and the cost of attachment bonds; and attorneys' fees.

## ARTICLE IV - BOARD OF TRUSTEES

### PART I  GENERAL PROVISIONS

4.1.01  Administration by the Board of Trustees

The Trust Fund shall be administered by the Board of Trustees appointed by the parties. The Trustees are expressly designated as named fiduciaries, and shall have exclusive authority and discretion, except as limited by the Collective Bargaining Agreements, to control and manage the operation and administration of the Fund and to establish and administer the Health and Welfare Plans.

4.1.02  Selection of Trustees

(A)  The Board of Trustees shall consist of two (2) Employer Trustees and two (2) Employee Trustees. The designation of a Trustee as Employer or Employee is made only to comply with Section 302(c) of the Labor Management Relations Act of 1947, and shall in no way be interpreted to permit the Trustees to act as an agent of the Union, Associations, Individual Employers, or other entity, in derogation of their duty to act solely in the interest of the participants and beneficiaries of the Trust Fund.

(B)    The Employee Trustees shall be selected by the Union. The Employee Trustees are hereby designated, individually and collectively, as Trustees representing the Employees, within the meaning of Section 302(c) of the Labor-Management Relations Act of 1947, as amended.

(C)    The Associations shall appoint the Employer Trustees. One (1) Trustee shall be selected by the Mechanical and Engineering Contractors Association or its successor and one (1) Trustee by the Landscape Contractors Association of Northern California or its successor. The Employer Trustees are hereby designated individually and collectively as representatives of each Employer within the meaning of Section 302(c) of the Labor-Management Relations Act of 1947, as amended.

(D)    Each Association may also appoint an Alternate Trustee, to serve in the absence of the regular Trustee. The Union may appoint up to two alternate Trustees. All Alternate Trustees may attend any meeting of the Board. An Alternate Trustee may not vote if both Trustees of his or her group is present. If an Employer Trustee is absent, the Alternate Trustee appointed by the same Association, if present, may vote in his or her place, or if not present, then the Alternate Trustee appointed by the other Association may vote in his or her place. If one Employee Trustee is absent, the Union may designate which of its alternates may vote in place of the absent trustee.

(E)    The initial Trustees shall be:

| EMPLOYER TRUSTEES | EMPLOYEE TRUSTEES |
|---|---|
| Linda Rossman | Dennis Soares |
| Bob Beeson, Alternate | Gerald Gramstad |

All Trustees, whenever appointed, shall indicate their acceptance of office by signing this Agreement or a written statement of acceptance.

4.1.03  Selection of Officers
The Board of Trustees shall select one of their number to be a Chairman and another to be a Co-Chairman. When the Chairman is selected from the Employer Trustees, the Co-Chairman shall be selected from Employee Trustees, and vice versa. The Board may appoint one of its members to be Secretary, who shall keep minutes of all meetings, which need not be verbatim, or the Board may designate a non-fiduciary to perform the duties of Secretary. The Board may appoint one of its members Treasurer, who shall cause to be prepared the annual financial report and shall thereupon make report to the Board, or the Board may appoint a non-fiduciary to perform the duties of the Treasurer. When a Secretary is selected from the Employer Trustees, a Treasurer shall be selected from Employee Trustees, and vice versa.

4.1.04  Term of Office of Trustees

The term of office of each Trustee shall be determined by the organization appointing the Trustee. Any Trustee may be removed at any time by the party by whom he or she was designated as a Trustee, upon the giving of written notice by such party to the Board of Trustees.

4.1.05  Resignation of Trustees

A Trustee may resign at any time upon giving written notice to the Board of Trustees and to the party appointing him or her, at least thirty (30) days prior to the date on which such resignation is to be effective.

4.1.06  Filling of Vacancies

In the event of the removal, resignation, legal disability or death of any Trustee, the party which originally designated such Trustee shall promptly designate a successor Trustee, who, upon acceptance of his or her appointment, shall have the same powers and duties as those conferred upon the Trustees hereunder, and who shall succeed to the interest of that predecessor Trustee in the Fund. In the event of the failure of the responsible entity to fill such vacancy within thirty (30) days, the remaining Employee or Employer Trustees, as the case may be, may select a successor who shall serve until such time as the entity originally responsible for appointing said Trustee shall have acted to appoint a successor.

4.1.07  Acting Despite a Vacancy

No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of this Trust, provided there are sufficient Trustees to constitute a quorum as hereinafter provided.

4.1.08  Notice of Changes in Trustee

Each organization designating or removing a Trustee or alternate pursuant to Section 4.1.02, or designating a successor Trustee pursuant to Section 4.1.05, shall, in each instance, give written notice of such action to the Board. Such notice shall be conclusively binding upon such party, and all other parties to this Agreement may rely conclusively on such notice.

4.1.09  Compensation of Trustees

The Board may provide for reasonable compensation for, and reimbursement of necessary expenses incurred by, Trustees in the performance of their duties as Trustees. However, no person who already receives full-time pay from an Employer, an Association, or the Union may receive more than reimbursement for expenses properly and actually incurred.

## PART II  PROCEDURE OF THE BOARD OF TRUSTEES

4.2.01  Acting only as a Body

The Board of Trustees shall act only as a body at regular or special meetings, or by the written assent of all Trustees.

#### 4.2.02  Calling of Meetings

The Board of Trustees shall meet at least once quarterly, or more often if the business of the Trust Fund so requires.  The Board of Trustees may appoint one of the Trustees, or the administrator of the Trust, as the person responsible for giving notice of the time of such meetings to the Trustees.  Special meetings of the Board of Trustees may be held at the call of the Chairman or the Co-Chairman upon giving five (5) days written notice to all other Trustees.  Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice, shall be a valid meeting.

#### 4.2.03  Quorum

A quorum of the Board of Trustees for the purpose of transacting business shall be one (1) Employee Trustee and one (1) Employer Trustee.  Unless a quorum is present, no business shall be transacted.

#### 4.2.04  Voting Procedures

In all matters coming before the Board of Trustees, the Employer Trustees as a unit shall have one vote and the Employee Trustees as a unit shall have one vote.  When voting as a unit, an Employer Trustee who is present may vote on behalf of any absent Employer Trustee(s).  If the Employer Trustees cannot agree as to how their vote shall be cast, then no vote shall be cast by them.  An Employee Trustee who is present at a meeting may vote on behalf of any absent Employee Trustee(s), in the same manner as provided for Employer Trustees.  In the event of a deadlock in a vote of the Board, the provisions for arbitration under Part 3 shall take effect.

### PART III ARBITRATION

#### 4.3.01  Resolution of Deadlocks

In the event of a deadlock in a vote of the Board of Trustees on any matter within their power, either group of Trustees, Employer or Employee, may, by a majority vote within ten (10) days of the occurrence of the deadlock, demand arbitration of the issue.

#### 4.3.02  Designation of an Arbiter

By agreement of the Board of Trustees, the dispute may be submitted to a Board of Arbitration, consisting of an equal number of Employer and Employee Trustees and an impartial umpire, selected by the Board pursuant to its procedures in Section 4.2.04.  In the absence of such agreement, the dispute shall be submitted to an impartial umpire alone, selected in like manner.  That Board, or that impartial umpire sitting alone, is hereinafter referred to as the arbiter.

#### 4.3.03  Effect of Further Deadlock

If the Board of Trustees cannot agree on an impartial umpire within ten (10) days, or if a Board of Arbitration is unable to reach a decision within the proper time provided, either group of Trustees, Employer or Employee, may petition the United States District Court for the Northern District of California to appoint an impartial umpire to hear the matter alone.

4.3.04  Procedure for Arbitration

The Board of Trustees shall submit the motion or motions on which there was a deadlock to the arbiter for decision. The Board of Trustees may submit a statement of facts about the matter in dispute to the arbiter. If the Board of Trustees cannot agree upon a joint statement, each group of Trustees may prepare a separate statement of the dispute within ten (10) days after the selection of the arbiter, or such other time as the arbiter may decide. The arbiter shall decide the matter on the basis of the written statements unless one or both groups of Trustees demands a hearing. The decision of the arbiter shall be rendered within fifteen (15) days, or a longer time if so specified by the Board of Trustees. All other matters of procedure shall be decided by the arbiter.

4.3.05  Reimbursement of Costs

The Trust Fund shall reimburse the Employer Trustees and the Employee Trustees for all reasonable costs of such arbitration proceedings. The Employer Trustees collectively and the Employee Trustees collectively shall be entitled to include in such costs expert witness fees and the reasonable costs and fees of one attorney incurred in representing them. If a deadlock arises as to the reasonableness of any cost, the same arbiter as originally heard the dispute shall hear the dispute on the costs.

4.3.06  Power of the Arbiter

All matters within the power of the Board of Trustees, including but not limited to the administration of the Trust Fund and the Health and Welfare Plans, shall be subject to arbitration under this Part. No matter on which the Board of Trustees may make a final determination, including the administration of the Fund and the Health and Welfare Plans, shall be subject to any grievance or arbitration procedure in any Collective Bargaining Agreement. No other matter specifically subject to, or excluded from, the grievance or arbitration procedure of any Collective Bargaining Agreement shall be subject to arbitration under this Part. The arbiter shall be bound by the provisions of this agreement, by the Collective Bargaining Agreements, and by the detailed provisions of the Health and Welfare Plans. The arbiter shall have no authority to amend the terms of any of those documents, except that in a dispute between the Employer Trustees and the Employee Trustees as to an amendment or modification of a Health and Welfare Plan, the arbiter may approve a motion to amend the detailed provisions of that Plan.

4.3.07  Finality of Decisions of the Arbiter

The vote of a majority of the Board of Arbitration or the decision of the impartial umpire, if sitting alone, shall be final and binding upon the Board of Trustees, upon all parties to this agreement, and upon the participants or other beneficiaries hereunder.

## PART IV  DUTIES AND POWERS OF TRUSTEES

4.4.01  Adoption of Health and Welfare Plans

The Board of Trustees shall carry out the purposes of this Agreement by adopting, amending and modifying Health and Welfare Plans which comply with all applicable laws of the United States; and shall administer the Trust Fund and the Health and Welfare Plans. The Health and Welfare Plans shall determine all matters necessary for

the provision of health and welfare benefits for current and former employees and their eligible dependents, except those matters determined by a Collective Bargaining Agreement. The benefits provided in the Plans shall be limited to those which may be provided on a fiscally sound basis. The Health and Welfare Plans and all amendments and modifications thereof shall be set forth in writing, and signed by the Chairman and Co-Chairman. The Trustees are expressly empowered to amend or terminate the Plans now offered or to adopt other plans, provided that such other plans are in full compliance with applicable federal laws.

### 4.4.02  Finality of Decisions

Any decisions or determinations of the Board of Trustees, which are not inconsistent with this Agreement or with the Health and Welfare Plans, on any matter within their powers, including the adoption of any and all terms and provisions of the Health and Welfare Plans, and the rights of any Employee or any other person asserting a claim under a Plan, shall be final and binding upon all parties.

### 4.4.03  Accounting of the Trust

The Board of Trustees shall maintain proper books of account and records of its administration of the Trust. The Board shall also cause an annual audit to be made of the Fund by a certified public accountant, a copy of which shall be furnished to the parties hereto and be available at the principal office of the Health and Welfare Trust for inspection by persons who have a legal interest in the Trust Fund. Copies of such statements shall be delivered to the Union, the Associations, and to each Trustee within five (5) days after they are prepared.

### 4.4.04  Auditing of Employer Contributions

Upon notice in writing from the Board of Trustees or an authorized agent of the Board, each Employer shall permit any accountant appointed by the Board to enter upon his, her or its premises at a reasonable time during business hours, to examine and copy such books, records, or reports of such Employer as may be necessary to determine whether the employer is making full and prompt payment of all sums required to be paid by that Employer to the Fund. As the purpose of such an audit would be defeated if it were limited in any way, the Employer may not limit the scope of the audit to the records concerning those employees performing covered employment.

The parties agree that the following records are necessary for the completion of an audit pursuant to this section:

    (a)   For a routine audit: the Employer's quarterly tax returns to the state and federal government, including California Form DE-3 and IRS Form 941; payroll journals; individual earnings records and time cards of all employees; general check register; reports of employee hours to all other trade unions and to all other employee benefit plans; and workers' compensation insurance reports for all employees.

    (b)   Upon the accountant's certification that further records are necessary to complete an audit, any of the following documents as specified by the auditor and approved by the Board of Trustees: general ledger, bank statements, canceled checks, IRS Forms W-2, W-4, 1096, and 1099, cash

receipts journal, financial statements, invoices, contracts, income tax returns, and any other records which the accountant deems necessary or relevant to complete the audit.

The cost of the audit shall be borne by the employer if the audit reveals that the Employer paid Contributions which were less than the amount due, by an amount equal to the lesser of $500 or 5% of all contributions due for the period covered by the audit. Any Employer who cancels an audit without at least two working days notice, or who fails to provide the required documents, shall be liable for the costs caused by that delay or that failure whether or not the audit reveals that any further Contributions were due. If an Employer refuses the accountant entry for the purposes of an audit, the Trust Fund may take legal action to compel entry, without regard to any grievance or arbitration procedure in a Collective Bargaining Agreement, and the Employer shall pay all the reasonable costs and legal fees incurred by the Trust Fund in compelling or obtaining such an audit.

### 4.4.05  Insurance

The Board of Trustees is expressly empowered to purchase insurance, including fidelity bonds, to cover liability or losses occurring by reason of the act or omission of any individual Trustee, other fiduciary, or agent of the Trust Fund,  and shall secure fidelity bonds for all fiduciaries and for all other people who handle money, as required by the laws of the United States; provided, however, that such insurance must permit recourse by the insurer against the Trustee or other fiduciary whose breach of a fiduciary obligation results in such loss or liability.  Nothing herein shall be construed, however, to prohibit any Trustee or other person or entity in a fiduciary relationship under the Trust from purchasing insurance to cover liability for his or her own account; or the Union, Employers, or Associations from purchasing insurance to cover liability of persons who serve in a fiduciary capacity pursuant to appointment by them.

### 4.4.06  Selection of an Administrator

The Board of Trustees may, but need not, employ a person or entity to act as Administrator of the Fund.  Such Administrator shall have no power, express or implied, to establish, determine or interpret policy.  The Board of Trustees may reasonably delegate their powers to the Administrator, to perform those tasks they deem necessary for the administration of the Trust.

### 4.4.07  Selection of a Co-Trustee

The Board of Trustees may select a California banking institution which is a member of a Federal Reserve Bank or which is subject to the supervision of the Superintendent of Banks, the Comptroller of Currency, or other federal agency which regulates depository institutions to act as Co-Trustee, and shall negotiate an agreement with such Co-Trustee under the terms of which said Co-Trustee shall receive, on behalf of the Trust, all Employer Contributions payable by Employers of this Trust.  The Board of Trustee may delegate appropriate fiduciary powers and duties to the Co-Trustee, including, but not limited to, the following powers: to be co-holder of title to any assets of the Trust; to make distributions from the Fund, pursuant to instructions from, or other authority granted by, the Board of Trustees; and to make investments for the Fund,

pursuant to instructions from the Board of Trustees or from an investment manager selected by the Board of Trustees.

4.4.08  <u>Designated Powers of the Board of Trustees</u>
In addition to any powers enumerated elsewhere in this Agreement, or granted by law, the Board of Trustees shall have the following powers:

(a)   To adopt, amend, and terminate Health and Welfare Plans within their sole discretion, in any manner not inconsistent with this Trust Agreement or the Collective Bargaining Agreements, and to interpret any and all terms of the Health and Welfare Plans;

(b)   To provide for the Health and Welfare and related benefits for Employees and others as the Trustees may determine in such Plans, either through the direct distribution of benefits from the Fund to persons entitled under the Plans, through the purchase of contracts of insurance or policies issued by licensed insurance carriers, by contracting with one or more health maintenance organizations and preferred provider organizations, or through any combination of the same, or by any other lawful method or methods as may be necessary and proper to place in effect and maintain such Plans;

(c)   To verify claims for the payment of benefits and determine whether the conditions for the payment of benefits as set forth in the Health and Welfare Plans have been fulfilled;

(d)   To determine the manner of payment of benefits;

(e)   To decide all questions relating to eligibility, amount and kind of benefits, and any similar or related questions arising in the administration of this Trust Fund and the Health and Welfare Plans;

(f)   To delegate duties as the Board reasonably deems appropriate to individual Trustees, subcommittees of the Board, or to persons other than named fiduciaries;

(g)   To collect, receive, hold and disburse all sums of money which are payable to or by the Trust Fund, and to establish reserve funds as they deem necessary to provide for the administrative expenses and other obligations of the Trust Fund;

(h)   To deposit any funds received by the Trust Fund in such bank or banks as the Board of Trustees may select, and to withdraw such funds for the purposes permitted by this Agreement;

(i)   To pay out of the Fund such sums as may be necessary for the purposes of the Trust Fund, including all sums necessary to establish and administer the Trust;

(j)   To employ any persons or entities necessary to administer the Trust, including legal counsel, accountants, insurance consultants, administrators, actuaries, investment counsellors and any other expert and/or clerical assistants as the Board of Trustees in their discretion may deem necessary or appropriate, whether to perform tasks for the Trust Fund, or to render advice with respect to any responsibility of the Board; to pay or cause to be paid compensation and expenses in connection therewith; and to delegate any appropriate powers and duties to those parties, including fiduciary duties, to the extent permitted by the laws of the United States;

(k)   To employ an investment manager to manage the assets of the Fund;

U. A. LOCAL NO. 355 HEALTH AND WELFARE TRUST FUND<br>TRUST AGREEMENT - Page 13

(l)    To establish an administrative office, to lease, purchase or otherwise secure premises necessary for such purposes, to purchase, lease or otherwise acquire furniture, fixtures, equipment and supplies necessary or desirable for the maintenance of such offices and the administration of the Trust and the Plans;

(m)    To contract with the Union for services necessary for the administration of the Trust Fund, and to compensate it the costs and expenses for such services, including such pro rata part of its general operating costs as the Board of Trustees shall determine to result directly from the performance of services for the Trust Fund, provided that such compensation shall be on a strictly budgeted basis and accounted for periodically by the Union;

(n)    To invest or reinvest such portions of the Fund as are not required for current expenditures or reserves in any manner as appropriate under the standard of care required in this Agreement. Those investments may include every kind of property, real, personal or mixed, as may be legal for the investment of trust funds under the laws of the United States, particularly ERISA, as amended;

(o)    To sell, exchange, lease, convey and otherwise dispose of any property of the Fund, upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance in connection therewith, or to delegate in writing the power to execute such instruments to the Co-Trustee, Administrator, Chairman or Co-Chairman of the Board of Trustees, or other agents;

(p)    To pay or provide for the payment of all real and personal property taxes, and other taxes or assessments of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust, or any money or property forming a part thereof, or the Plans;

(q)    To enter into any and all contracts and agreements for the purpose of carrying out the terms of this Agreement, and for the administration of the Trust and the Health and Welfare Plans;

(r)    To maintain any and all actions or legal proceedings which may be deemed necessary for the protection of the Trust, the Fund, or the Board of Trustees, or to secure the payment of Employer Contributions to the Trust, or to effectuate the administration of the Trust or the Health and Welfare Plans, or to secure the benefits contemplated hereby, and in connection therewith to compromise, settle or release claims on behalf of or against the Trust Fund and/or the Board of Trustees; provided, however, that no such compromise or release shall in any way compromise, settle or release any Individual Employer from any liability incurred by breach of a Collective Bargaining Agreement, except as to the liability to this Trust Fund;

(s)    To receive separate supplemental contributions made upon behalf of employees in a collective bargaining unit represented by the Union; and

(t)    To adopt rules and regulations as appropriate for the administration of the Trust Fund and the Health and Welfare Plans and for any and all matters affecting the Trust Fund or the Health and Welfare Plans.

4.4.09  Reciprocity Agreements

The Board of Trustees shall have the power to enter into agreements with other qualified and exempt trust funds which provide the same or similar benefits as this Trust Fund, to permit the payment of Employer Contributions required under Collective Bargaining Agreements to be made to such other trust funds, for the benefit of any Employee who so requests.  The amount of the Employer Contribution which may be paid to such other trust shall be limited to the amount required by collective bargaining agreements which require payment to those other funds, but in no event more than the Employer Contribution required by the Collective Bargaining Agreement under which the Employee is working at the time, less 5% of the amount transferred to cover the cost of the transfer.  However, no such agreement is valid unless it also provides that Employees for whose benefits contributions would be made to such other trust fund may elect to have those contributions made on their behalf to this Trust Fund.

4.4.10  Addition of Participants Not Represented by the Union

The Board of Trustees shall have the power to vote from time to time to permit participation of Employees working under the collective bargaining agreements of labor organizations other than the Union.  Participation on this basis will:

(a)  require a request by the labor organization which will specify what benefit package is being requested for the new participants;

(b)  be permitted only if the contribution rate will support the benefit package in the opinion of the Consultant without any subsidy from other Fund assets;

(c)  be permitted only upon execution of a participation agreement by each employer, in a form approved by the Trustees; and

(d)  be subject to such other rules as are adopted from time to time by the Trustees.

4.4.11  General Powers of the Trustees

In addition to any powers specified in this Agreement, the Board of Trustees shall have such powers as may be necessary to carry out the purposes of this Trust and to discharge the obligations of the Trust and of the Board of Trustees.

## PART V - LIABILITY OF TRUSTEES

4.5.01  Standard of Care

The Trustees, in the performance of their duties, shall act solely in the interest of the participants and qualified beneficiaries of the Plans.  The Trustees shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in particular shall diversify the investments of the Trust Fund so as to minimize the risk of large losses unless under the circumstances it is clearly not prudent to do so.

4.5.02  Scope of Trustee Liability

Nothing in this Agreement shall be construed to enlarge the liabilities of the Trustees beyond what is required of them under the provisions of ERISA, as amended. The Fund shall exonerate, reimburse, and hold harmless the Trustees individually and collectively against any and all liabilities and reasonable expenses arising out of the Trusteeship, including attorneys' fees for a defense against civil or criminal liability, to the fullest extent permitted by law, save and except as to the individual Trustee or Trustees, only such liabilities and expenses as may arise out of their failure to perform the duties of their trust as defined in the Act.

4.5.03  Non-Liability of the Parties

Neither the Associations nor any Individual Employer, nor the Union, shall be liable in any respect for any of the obligations or acts of the Board of Trustees or any particular Trustee, because any Trustee is in any way associated with such Associations, Individual Employer, or Union.  In addition, neither the Associations nor any Individual Employer, nor the Union, shall be responsible or liable for:

    (a)    the validity of this Agreement or the Health and Welfare Plans;

    (b)    the form, validity, sufficiency, or effect of any Plan, contract or policy for Health and Welfare benefits;

    (c)    any delay occasioned by any restriction or provision in this Agreement, the Health and Welfare Plans, or the rules and procedures of the Board of Trustees; provided, however, that this clause shall not excuse any violation of a Collective Bargaining Agreement; or

    (d)    the act or omission of any person or entity with respect to the making or retention of any deposit or investment of the Fund, or the disposition of any such investments, or any other loss or diminution of the Fund, except for the particular person or entity involved to the extent that such loss is due to the gross neglect or willful misconduct of such person.

4.5.04  Return of Trust Property

Any Trustee who resigns or is removed from office shall forthwith turn over to the Chairman or Co-Chairman of the Board any and all records, books, documents, monies, and other property in his possession or under his control which belong to the Board or the Fund, or which were received by him in his capacity as such Trustee.

## ARTICLE V - EXECUTION AND AMENDMENT OF THE AGREEMENT

5.01  Obligations of Parties and Successors

The terms of this Agreement shall be effective on the date it is fully executed by the Associations and the Union.  This Agreement shall be binding on the Associations, the Union, the Individual Employers, and the Employees, and the successors, assigns, and personal representatives of all those parties, in perpetuity.  However, the duration of the Trust Fund shall not exceed any period established by law.

5.02  Power to Amend
     The parties to this Agreement shall have the power to amend it by mutual agreement, provided that no amendment may:

    (a)    alter the basic purposes of this Trust Fund or cause the assets of the Trust Fund to be diverted for any purposes other than those stated in Section 2.02;

    (b)    violate any applicable law or regulation or a provision of a Collective Bargaining Agreement, or cause any Employer Contribution to not be a deductible expense under the Internal Revenue Code.

Any amendment shall be effective as of the date on which it is approved in writing by the parties, or as of any other date selected by the parties as the circumstances require.

5.03  Termination of the Agreement
     This Agreement may be terminated at any time by the Associations and the Union by an instrument in writing. If some but not all of the parties to this agreement cease to participate in the Trust Fund for any reason, the Trust Fund shall not terminate, but shall continue with the remaining parties and any additional or substitute parties as are required for continuation of the Trust Fund. The remaining parties may amend this Agreement as they deem necessary to reflect such changes of participation. If the obligation of all Individual Employers to make contributions shall terminate, the Trustees shall apply the assets of the Fund for the purposes stated in Section 2.02, or transfer the assets to another tax-exempt trust fund established to provide health and welfare benefits to employees working under collective bargaining agreements of U. A. Local No. 355 or its successor, or if none, to another tax-exempt trust fund established to provide health and welfare benefits to employees working under collective bargaining agreements of one or more Local Unions or District Councils of the United Association. Upon the disposition of the assets of the Trust Fund, the Trust Fund shall terminate.

5.04  Distribution of Assets on Termination
     In lieu of termination of the Trust Fund under Section 5.03, the Board of Trustees shall have the power, upon the request of the Union, to merge the Fund with another health and welfare trust fund established by the Union and by employers of the employees represented by the Union, for the purpose of providing those benefits which the participants and beneficiaries would have received under the Health and Welfare Plans. The Board may also distribute any surplus assets to a successor health and welfare trust fund established by the Union and employers.

IN WITNESS THEREOF, the parties hereto have executed, by their officers or duly authorized representatives, this Agreement and Declaration of Trust on the dates indicated below.  This Agreement may be signed in counterpart.

Mechanical and Engineering
Contractors Association

U. A. Local No. 355

By _____

By _____

Date _____3-24-95_____

Date _____

Landscape Contractors Association
of Northern California

By _____

Date _____

IN WITNESS THEREOF, the parties hereto have executed, by their officers or duly authorized representatives, this Agreement and Declaration of Trust on the dates indicated below. This Agreement may be signed in counterpart.

Mechanical and Engineering
Contractors Association

U. A. Local No. 355

By _____

By _____

Date _____

Date _____3-28-95_____

Landscape Contractors Association
of Northern California

By _____

Date _____3-28-95_____

IN WITNESS OF THE EXECUTION OF THIS AGREEMENT AND
DECLARATION OF TRUST, the Trustees have subscribed their names to evidence
their acceptance of this Agreement and Declaration of Trust and their willingness to
serve and be bound as herein provided.

EMPLOYER TRUSTEES AND                    EMPLOYEE TRUSTEES AND
ALTERNATES                               ALTERNATES

*Gary Andrus*                            _____

*William Fong*                           _____

_____              _____

_____              _____

U. A. LOCAL NO. 355 HEALTH AND WELFARE TRUST FUND
TRUST AGREEMENT - Page 19

**U.A. LOCAL NO. 343 PENSION TRUST FUND
TRUST AGREEMENT**

**FIRST AMENDMENT**

It is hereby agreed by the parties hereto that Section 3.06 of Article III of the Trust Agreement be amended to read in its entirety as follows:

3.06 <u>Liquidated Damages and Interest</u>

Insofar as the regular and prompt payment of Employer Contributions are concerned, the parties recognize that time is of the essence. The parties further recognize that the actual damages to the Trust Fund for any delay in, or default of, an Employer in making an Employer Contribution would be extremely difficult, if not impossible, to determine. The parties therefore agree that if an Employer fails to make an Employer Contribution on or before the due date established by the Trustees, there shall be added, as liquidated damages, and not as a penalty, 10% of the Contributions due, which amount shall be due and payable on the date that the Contributions were due. In addition, all late contributions and liquidated damages shall bear interest at a rate of 12% per annum, from the date each was due, until paid. The Employer shall remain liable for the payment of the liquidated damages and interest, even if it makes late full payment of the required fringe benefit contributions, unless waived by the Board of Trustees.

The parties further agree that if the Trust Fund files a legal action to collect unpaid Contributions or unpaid liquidated damages, the liquidated damages for any Contributions still unpaid on the date the legal action is filed shall be increased to 20% of the contributions due. For any late Contribution to be deemed paid prior to the filing of a legal action, the Trust Fund must have received cash, a cashier's check, a certified check, or a money order, or, in the case of an ordinary check, received actual payment into the Trust Fund's account from the Employer's bank by the end of the last business day before the day on which the lawsuit is filed. Notwithstanding any provisions to the contrary herein, or any provision in any Collective Bargaining Agreement which provides for contributions to this Fund, this Section shall supersede and govern the assessment and collection of liquidated damages, interest and collection costs due to this Fund.

In addition to the foregoing, it shall not be a violation of any Collective Bargaining Agreement for the Union to refuse to man a job or to withdraw employees from the job or jobs of a delinquent Individual Employer.

U.A. LOCAL NO. 343 PENSION TRUST FUND
TRUST AGREEMENT - FIRST AMENDMENT - Page 1

Exhibit  B

IN WITNESS THEREOF, the parties hereto have executed, by their officers or duly authorized representatives, this Amendment on the dates indicated below.

Plumbing, Heating, and Cooling
Contractors of Napa, Solano
and Lake Counties

By _____

Date _____ 1-24-95 _____

U. A. Local No. 343

By _____

Date _____ 2-14-95 _____

Mechanical Contractors Association
of Northern California, Inc.

By _____

Date _____ 1-29-95 _____

U. A. Local No. 355

By _____

Date _____ 2-13-95 _____

Landscape Contractors Council
of Northern California

By _____

Date _____ 2-3-95 _____

## U.A. LOCAL NO. 343 PENSION TRUST FUND
## TRUST AGREEMENT

WHEREAS U.A. Local No. 343 (hereinafter the Union) is the collective bargaining representative of employees in the plumbing, pipefitting or refrigeration fitting industries in its geographical jurisdiction, and

WHEREAS the Union has made and will make collective bargaining agreements with the Mechanical Contractors Association of Northern California, and the Plumbing, Heating, and Cooling Contractors of Napa, Solano and Lake Counties (hereinafter the Associations) and

WHEREAS those collective bargaining agreements require contributions to a trust fund for the purpose of providing pensions on retirement to current and former employees performing covered employment and related benefits to beneficiaries, and

WHEREAS the Union and the Associations have agreed to form a Pension Trust Fund for the purpose of providing pensions on retirement to current and former employees performing covered employment and related benefits to beneficiaries,

SO IT IS NOW HEREBY AGREED that the U.A. Local No. 343 Pension Trust Fund Trust Agreement is hereby adopted by the parties, to read in its entirety as follows.



Exhibit _C_

# TABLE OF CONTENTS

**SECTION**                                                              **PAGE**

ARTICLE I - DEFINITIONS ............................................. 1
   1.01   AGREEMENT ............................................. 1
   1.02   TRUST FUND ............................................ 1
   1.03   EMPLOYER ASSOCIATIONS ............................... 1
   1.04   UNION ................................................. 1
   1.05   COLLECTIVE BARGAINING AGREEMENT ................. 1
   1.06   EMPLOYER ............................................. 1
   1.07   EMPLOYEE ............................................. 1
   1.08   FUND ................................................. 1
   1.09   TRUSTEE ............................................... 1
   1.10   CO-TRUSTEE ........................................... 1
   1.11   PENSION PLAN and PLANS .............................. 1
   1.12   EMPLOYER CONTRIBUTIONS .......................... 1
   1.13   ERISA ................................................. 1

ARTICLE II - GENERAL PROVISIONS ............................... 2
   2.01 Establishment of the Fund ................................. 2
   2.02 Purposes of the Fund ..................................... 2
   2.03 Assets of the Fund ....................................... 2
   2.04 Title to the Assets of the Fund ............................ 2
   2.05 Independence of the Trust Fund ........................... 2
   2.06 Non-Liability of the Trust Fund ........................... 3
   2.07 Reliance on the Trust Fund ............................... 3
   2.08 Governing Law .......................................... 3
   2.09 Principal Office ......................................... 3
   2.10 Notice ................................................. 4
   2.11 Confidentiality of Trust Fund Documents ................... 4

ARTICLE III - EMPLOYER CONTRIBUTIONS .......................... 4
   3.01 Liability of Employers ................................... 4
   3.02 Scope of Employer Liability ............................... 4
   3.03 Credit or Refunds ....................................... 4
   3.04 Union and Related Entities as Employers ................... 5
   3.05 Due Date and Reports .................................... 5
   3.06 Liquidated Damages and Interest ......................... 5
   3.07 Actions to Collect Delinquent Obligations ................. 6

ARTICLE IV - BOARD OF TRUSTEES ............................... 6
   PART I  GENERAL PROVISIONS ............................. 6
   4.1.01 Administration by the Board of Trustees ................. 6
   4.1.02 Selection of Trustees ................................... 7
   4.1.03 Selection of Officers ................................... 7
   4.1.04 Term of Office of Trustees .............................. 8

**SECTION**                                                                                                  **PAGE**

4.1.05  Resignation of Trustees .....................................  8
4.1.06  Filling of Vacancies  .......................................  8
4.1.07  Acting Despite a Vacancy ...................................  8
4.1.08  Notice of Changes in Trustee  ..............................  8
4.1.09  Compensation of Trustees ...................................  8
PART II  PROCEDURE OF THE BOARD OF TRUSTEES  ............  8
4.2.01  Acting only as a Body .......................................  8
4.2.02  Calling of Meetings ........................................  9
4.2.03  Quorum ....................................................  9
4.2.04  Voting Procedures  .........................................  9
PART III ARBITRATION  ...........................................  9
4.3.01  Resolution of Deadlocks ....................................  9
4.3.02  Designation of an Arbiter ..................................  9
4.3.03  Effect of Further Deadlock  ................................  9
4.3.04  Procedure for Arbitration  .................................  10
4.3.05  Reimbursement of Costs ....................................  10
4.3.06  Power of the Arbiter ......................................  10
4.3.07  Finality of Decisions of the Arbiter  ......................  10
PART IV  DUTIES AND POWERS OF TRUSTEES .................  10
4.4.01  Adoption of Pension Plans  .................................  10
4.4.02  Finality of Decisions ......................................  11
4.4.03  Accounting of the Trust  ...................................  11
4.4.04  Auditing of Employer Contributions  .......................  11
4.4.05  Insurance  ................................................  12
4.4.06  Selection of an Administrator  .............................  12
4.4.07  Selection of a Co-Trustee  .................................  12
4.4.08  Designated Powers of the Board of Trustees .................  13
4.4.09  Reciprocity Agreements  ...................................  14
4.4.10  Addition of Participants Not Represented by the Union  .....  15
4.4.11  General Powers of the Trustees  ...........................  15
PART V - LIABILITY OF TRUSTEES  .........................  15
4.5.01  Standard of Care  .........................................  15
4.5.02  Scope of Trustee Liability .................................  15
4.5.03  Non-Liability of the Parties ...............................  16
4.5.04  Return of Trust Property ...................................  16

ARTICLE V - EXECUTION AND AMENDMENT OF THE AGREEMENT ....  16
5.01  Obligations of Parties and Successors .........................  16
5.02  Power to Amend ..............................................  16
5.03  Termination of the Agreement  ..............................  17
5.04  Distribution of Assets on Termination .........................  17

## ARTICLE I - DEFINITIONS

1.01   AGREEMENT means this Trust Agreement.

1.02   TRUST FUND or Trust means the U.A. Local No. 343 Pension Trust Fund.

1.03   EMPLOYER ASSOCIATIONS or ASSOCIATIONS means the Mechanical Contractors Association of Northern California or its successor, and the Plumbing, Heating, and Cooling Contractors of Napa, Solano and Lake Counties or its successor, and where applicable, the Landscape Contractors Council of Northern California or its successor.

1.04   UNION means Local Union No. 343, or where applicable, Local Unions Nos. 343 and 355 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO.

1.05   COLLECTIVE BARGAINING AGREEMENT means any agreement in writing between the Union and one or more Associations, or the Union and an individual employer not represented by an Association, covering wages, fringe benefits contributions, or other conditions of employment of employees in the plumbing, pipefitting, refrigeration fitting, landscape or utility pipeline industries.

1.06   EMPLOYER or INDIVIDUAL EMPLOYER means any employer required to make contributions to the Trust Fund in accordance with a Collective Bargaining Agreement with the Union, or the heirs, executors, administrators, successors, purchasers, and assignees of such an Employer; or any such person or entity who or which makes contributions to the Trust Fund; or the Union or a related organization, to the extent that it may contribute on behalf of its employees, agents and representatives, pursuant to Section 3.04 of this Agreement.

1.07   EMPLOYEE means any person who performs or has performed work covered under a Collective Bargaining Agreement between an Employer and the Union, for whom the Employer is obligated to make a contribution to the Trust Fund; or any qualified employee, agent or representative of the Union or a related organization which is participating herein as an Employer pursuant to Section 3.04 of this Agreement.

1.08   FUND means all of the assets of whatever kind which comprise the property of the Trust Fund.

1.09   TRUSTEE means any person designated as Trustee, pursuant to Article IV below. The term "Board of Trustees" means the Trustees acting collectively as a body as trustees for the Trust Fund.

1.10   CO-TRUSTEE means the Co-Trustee selected by the Board of Trustees pursuant to Section 4.4.07 below.

1.11   PENSION PLAN and PLANS mean the plans relating to the distribution of pension or retirement benefits pursuant to Section 4.4.01 below, including any amendments, alterations or modifications thereof, adopted by the Board of Trustees.

1.12   EMPLOYER CONTRIBUTIONS means any payments made to the Trust Fund by an Employer pursuant to a Collective Bargaining Agreement with the Union, or by the Union in accordance with Section 3.04 of this Agreement.

1.13   ERISA means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq.

## ARTICLE II - GENERAL PROVISIONS

2.01  Establishment of the Fund

There is hereby created the U.A. Local No. 343 Pension Trust Fund, a trust fund for the uses and purposes herein set forth. The Board of Trustees, and only the Board of Trustees, may use the name "U.A. Local No. 343 Pension Trust Fund" to designate the Trust Fund or the Board of Trustees collectively in all transactions of, and on all documents of, the Trust Fund.

2.02  Purposes of the Fund

The Trust Fund is established solely for the benefit of the Employees and their families and dependents, for the purpose of paying pensions on retirement and related benefits to Employees or their qualified beneficiaries, from the principal and income of the Fund, and paying any reasonable expenses incurred in the establishment and administration of the Trust Fund, and for no other purpose.

2.03  Assets of the Fund

The Fund shall consist of all Employer Contributions, all investments made and held in the Trust Fund and all income therefrom, and any other property acquired, received or held by reason of this Agreement for the benefit of the Trust Fund.

2.04  Title to the Assets of the Fund

The entire right, title and interest to the Trust Fund is vested in the Board of Trustees. Neither the Board of Trustees nor any individual Trustee shall have powers, duties or liabilities with respect to the Trust Fund except as specified in this Agreement. Except as provided in a Collective Bargaining Agreement, the rights and duties of the Associations, the Union, the Individual Employers, the Employees and their beneficiaries, with respect to the provision of pensions and related benefits to participants and beneficiaries, shall be governed by this Agreement, by the Pension Plans, and by the actions of the Board of Trustees. In the case of a dispute as to the rights of any person as to eligibility for, type of, amount of or any other aspect of a benefit provided by the Fund, the decision of the Board is final.

2.05  Independence of the Trust Fund

Except as provided in this Agreement or in the Pension Plans, neither the Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, nor any other person or entity shall have any right, title or interest with respect to the assets of the Trust Fund; nor shall they be liable for any debts, liabilities or obligations of the Trust Fund, including those obligations which may arise from the failure to pay a benefit under the Pension Plans. Furthermore, no part of the Fund shall revert to any Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, or any other person or entity, except as specifically provided in this Agreement. However, nothing herein shall be construed to prevent the Trustees from contracting with a party-in-interest

U.A. LOCAL NO. 343 PENSION TRUST FUND
TRUST AGREEMENT - Page 2

for services in connection with the administration of the Pension Plans, to the extent permitted under Section 408(b) of ERISA.

2.06  Non-Liability of the Trust Fund

No asset of the Fund shall be liable in any manner for, or subject to, the debts of the Individual Employers, the Employer Associations or any association, the Union or any labor organization or any members of the Union, the individual Employees or their families and dependents or other qualified beneficiaries, or any other person or entity.  No part of the Fund, nor any benefits payable in accordance with the Plans, shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person or entity, except as required by the laws of the United States.  However, the Board of Trustees may permit Employees or their dependents to assign the right to benefits to a provider or services or supplies so that the provider may be paid directly from the Fund for covered services or supplies.

2.07  Reliance on the Trust Fund

No person or entity that has verified that he, she or it is dealing with the duly appointed Board of Trustees, or any authorized representative of them, shall be obligated to see to the application of any money or property of the Fund, or to see that the terms of this Agreement have been observed, or to inquire as to the necessity or expediency of any act of the Board of Trustees.  Every instrument executed by the Board of Trustees or at their direction shall be conclusive in favor of every person who relies on it, that:

    (a)    at the time of the delivery of the instrument this Agreement was in full force and effect;

    (b)    the instrument was executed in accordance with the terms and conditions of this Agreement; and

    (c)    the Board of Trustees were duly authorized to execute the instrument or direct its execution.

2.08  Governing Law

The interpretation of this Agreement and of the Pension Plans shall be governed by the laws of the United States to the extent applicable and otherwise under the laws of the State of California.  This Agreement and the Plans shall be construed to be in accordance with those laws if at all possible.  In the event that any section of this Agreement or any part thereof becomes illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Agreement unless such illegality or invalidity prevents the Board of Trustees from accomplishing the purposes of the Trust Fund, at which time the parties shall take steps to amend this Agreement to eliminate the illegality or invalidity.  If any part of the Pension Plans or any aspect of their administration is determined to be illegal or invalid, the Board of Trustees shall take whatever action is necessary to remedy that illegality or invalidity.

2.09  Principal Office

The Board of Trustees shall have the power to establish and move the principal office of the Trust Fund to such locations within the State of California as it sees fit.

2.10 <u>Notice</u>

Any notice required to be given under the terms of this Agreement shall be deemed to have been duly given if delivered personally to the person or organization to be notified, or if sent by telegraph or certified mail to such person or organization at his, her or its last known address as shown in the records of the Board of Trustees.

2.11 <u>Confidentiality of Trust Fund Documents</u>

Except as necessary for the proper administration of the Trust Fund and the Pension Plans, all documents and information in the possession of the Trust Fund are confidential, and shall not be made public or used for any purpose except as the Board of Trustees may find necessary to, or useful in, the administration of the Trust Fund or of the Pension Plans. This provision shall not be construed to prohibit any Trustees from examining documents of the Trust Fund, or to prohibit the preparation and publication of statistical data and summary reports as required by law, or to prohibit delivery of copies of the minutes of the meetings of the Board of Trustees to the individual Trustees, or to the Union for the information of their members.

### ARTICLE III - EMPLOYER CONTRIBUTIONS

3.01 <u>Liability of Employers</u>

Each Employer shall contribute to the Fund, for the benefit of each covered Employee, such sums of money as shall be required by Collective Bargaining Agreements with the Union, by this Agreement, and by such regulations of the Board of Trustees as are not inconsistent with this Agreement. The payment of money by an Employer to an Employee as an attempt to create a substitute for the payment of contributions to this Trust Fund shall not relieve the Employer of any obligation to this Trust Fund.

3.02 <u>Scope of Employer Liability</u>

Neither the Individual Employers, nor the Associations, nor any officer or member of an Association, shall be liable for the debts of any other Employer or Association. However, if any Individual Employer joins with one or more employers which are not Individual Employers under this Agreement, to perform work covered under the Individual Employer's Collective Bargaining Agreement, that Individual Employer shall be liable for the payment of contributions to this Trust Fund as though all the employees of all the employers so joined were employees of the Individual Employer.

3.03 <u>Credit or Refunds</u>

Any Employer shall be entitled to credit for or refund of money paid to the Trust by reason of clerical or administrative error as to the amount owed to the Trust Fund, if that Employer has no unpaid obligations to the Trust Fund, to the extent permitted by law and to the extent that such refunds do not adversely affect the actuarial soundness or administration of the Plans. The Board of Trustees may prescribe reasonable regulations as to the time for filing requests for refunds and the manner or procedure for making credits or refunds.

3.04  Union and Related Entities as Employers

The Union and related entities shall be considered Employers under this Agreement solely for the purpose of permitting the Union and the related entities to contribute to the Fund on behalf of certain of their employees, so that those employees may be participants in the Pension Plans. Such Employees shall be limited to those persons who perform paid work for the Union or a related entity as employees, agents or representatives. A related entity means any labor organization, apprenticeship training school, or similar organization, which the Trustees determine, in their sole discretion, to be affiliated or associated with the Union, and which executes a subscription agreement with the Trust Fund, which describes the terms under which contributions are to be made to this Trust Fund. In this capacity as Employer, the Union and the related entities shall have no rights, privileges or powers as an Employer under the Agreement or the Pension Plans, except to make contributions pursuant to Section 3.01, or to receive credit pursuant to Section 3.03. If any situation shall arise in which the rules of the Pension Plans are not applicable to the Union and their Employees, then the Board of Trustees shall have the power to make appropriate rules and regulations with respect to the Union, the related entities, and their Employees, provided that such rules and regulations are not inconsistent with the Pension Plans or this Agreement.

3.05  Due Date and Reports

Employer Contributions for the hours worked by the covered Employees of each Employer shall be due and payable at such times and in such form as directed by the Board of Trustees, consistent with the provisions of the Employer's Collective Bargaining Agreement. Each monthly contribution shall be accompanied by a report on such forms as the Board of Trustees shall reasonably require. If an Individual Employer has no Employees during a month, the Board may require the Employer to submit a monthly remittance report, informing the Trust Fund that it had no Employees for that month.

3.06  Liquidated Damages and Interest

Insofar as the regular and prompt payment of Employer Contributions are concerned, the parties recognize that time is of the essence. The parties further recognize that the actual damages to the Trust Fund for any delay in, or default of, an Employer in making an Employer Contribution would be extremely difficult, if not impossible, to determine. The parties therefore agree that if an Employer fails to make an Employer Contribution on or before the due date established by the Trustees, there shall be added, as liquidated damages, and not as a penalty, 10% of the Contributions due, or $200, whichever is greater, due and payable on the date that the Contributions were due. In addition, all late contributions and liquidated damages shall bear interest at a rate of 12% per annum, from the date each was due, until paid. The Employer shall remain liable for the payment of the liquidated damages and interest, even if it makes late full payment of the required fringe benefit contributions, unless waived by the Board of Trustees.

The parties further agree that if the Trust Fund files a legal action to collect unpaid Contributions or unpaid liquidated damages, the liquidated damages for any Contributions still unpaid on the date the legal action is filed shall be increased to 20% of the contributions due. For any late Contribution to be deemed paid prior to the filing of a legal action, the Trust Fund must have received cash, a cashier's check, a certified check, or a money

order, or, in the case of an ordinary check, received actual payment into the Trust Fund's account from the Employer's bank by the end of the last business day before the day on which the lawsuit is filed.  This Section shall supersede any provision in a Collective Bargaining Agreement permitting the collection of any amounts in excess of the amount permitted under this Section.

In addition to the foregoing, it shall not be a violation of any Collective Bargaining Agreement for the Union to refuse to man a job or to withdraw employees from the job or jobs of a delinquent Individual Employer.

### 3.07  Actions to Collect Delinquent Obligations

If any Employer is delinquent in the making of Employer Contributions or the payment of any other obligations to the Trust, the Board of Trustees may take such legal or other action as they see fit to enforce collection.  In such event, the Employer shall be liable for all reasonable expenses incurred by the Board of Trustees in taking such action, including but not limited to: all reasonable expenses incurred in preparation for a lawsuit, including accounting fees; all legal costs, including court costs and the cost of attachment bonds; and attorneys' fees.

## ARTICLE IV - BOARD OF TRUSTEES

### PART I  GENERAL PROVISIONS

#### 4.1.01  Administration by the Board of Trustees

(a)     The Trust Fund shall be administered by the Board of Trustees appointed by the parties.  The Trustees are expressly designated as named fiduciaries, and shall have exclusive authority and discretion, except as limited by the Collective Bargaining Agreements, to control and manage the operation and administration of the Fund and to establish and administer the Pension Plans.

(b)     The power to administer the Trust Fund shall be divided among the Trustees as follows:

1.     All matters of concern to the administration of the Fund's Defined Benefit Plan, and of any plan to which only employees employed under Collective Bargaining Agreements of U.A. Local No. 343 participate, shall be subject to the control of the Board as a whole, except that the Trustee appointed by Local Union No. 355 and the Trustee appointed by the Landscape Contractors Council of Northern California shall have no voice or vote on such matters. However, if Local Union No. 355 enters into collective bargaining agreements calling for contributions to be made to the Defined Benefit Plan, and contributions are made to the Trust Fund pursuant to such a collective bargaining agreement, the Trustee appointed by Local Union No. 355 and the Trustee appointed by the Landscape Contractors Council of Northern California shall have a voice and a vote with respect to that Plan.

2.     All matters of concern to the administration of the Fund's Defined Contribution Plan, shall be subject to the control of the Board as a whole and the Trustee appointed by Local Union No. 355 and the Trustee appointed by the Landscape Contractors Council of Northern California shall have a voice and a vote on such matters.

4.1.02  Selection of Trustees

(A)    The Board of Trustees shall consist of three (3) Employer Trustees and three (3) Employee Trustees. The designation of a Trustee as Employer or Employee is made only to comply with Section 302(c) of the Labor Management Relations Act of 1947, and shall in no way be interpreted to permit the Trustees to act as an agent of the Union, Associations, Individual Employers, or other entity, in derogation of their duty to act solely in the interest of the participants and beneficiaries of the Trust Fund.

(B)    Two (2) Employee Trustees shall be selected by Local Union No. 343 and one (1) by Local Union No. 355. The Employee Trustees are hereby designated, individually and collectively, as Trustees representing the Employees, within the meaning of Section 302(c) of the Labor-Management Relations Act of 1947, as amended.

(C)    The Associations shall appoint the Employer Trustees. One (1) Trustee shall be selected by the Plumbing, Heating, and Cooling Contractors of Napa, Solano and Lake Counties or its successor, one (1) by the Mechanical Contractors Association of Northern California or its successor, and one by the Landscape Contractors Council of Northern California or its successor. The Employer Trustees are hereby designated individually and collectively as representatives of each Employer within the meaning of Section 302(c) of the Labor-Management Relations Act of 1947, as amended.

(D)    Each Association and the Union may also appoint an Alternate Trustee, to serve in the absence of the regular Trustee. Such Alternate Trustees may attend any meeting of the Board, but may not vote if the regular Trustee is present.

(E)    The initial Trustees shall be:

| EMPLOYER TRUSTEES | EMPLOYEE TRUSTEES |
|---|---|
| Scott Strawbridge | Michael Beavers |
| William Cawley | Joseph Posedel |
| Linda Rossman | Dennis Soares |

All Trustees, whenever appointed, shall indicate their acceptance of office by signing this Agreement or a written statement of acceptance.

4.1.03  Selection of Officers

The Board of Trustees shall select one of their number to be a Chairman and another to be a Co-Chairman. When the Chairman is selected from the Employer Trustees, the Co-Chairman shall be selected from Employee Trustees, and vice versa. The Board shall appoint one of its members to be Secretary, who shall keep minutes of all meetings, which need not be verbatim. The Board shall appoint one of its members Treasurer, who shall cause to be prepared the annual financial report and shall thereupon make report to the Board. When the Secretary is selected from the Employer Trustees, the Treasurer shall be selected from Employee Trustees, and vice versa.

U.A. LOCAL NO. 343 PENSION TRUST FUND
TRUST AGREEMENT - Page 7

4.1.04  Term of Office of Trustees
       The term of office of each Trustee shall be determined by the organization appointing the Trustee.  Any Trustee may be removed at any time by the party by whom he or she was designated as a Trustee, upon the giving of written notice by such party to the Board of Trustees.

4.1.05  Resignation of Trustees
       A Trustee may resign at any time upon giving written notice to the Board of Trustees and to the party appointing him or her, at least thirty (30) days prior to the date on which such resignation is to be effective.

4.1.06  Filling of Vacancies
       In the event of the removal, resignation, legal disability or death of any Trustee, the party which originally designated such Trustee shall promptly designate a successor Trustee, who, upon acceptance of his or her appointment, shall have the same powers and duties as those conferred upon the Trustees hereunder, and who shall succeed to the interest of that predecessor Trustee in the Fund.  In the event of the failure of the responsible entity to fill such vacancy within thirty (30) days, the remaining Employee or Employer Trustees, as the case may be, may select a successor who shall serve until such time as the entity originally responsible for appointing said Trustee shall have acted to appoint a successor.

4.1.07  Acting Despite a Vacancy
       No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees to administer the affairs of this Trust, provided there are sufficient Trustees to constitute a quorum as hereinafter provided.

4.1.08  Notice of Changes in Trustee
       Each organization originally designating or removing a Trustee pursuant to Section 4.1.01, or designating a successor Trustee pursuant to Section 4.1.05, shall, in each instance, give written notice of such action to the Board.  Such notice shall be conclusively binding upon such party, and all other parties to this Agreement may rely conclusively on such notice.

4.1.09  Compensation of Trustees
       The Board may provide for reasonable compensation for, and reimbursement of necessary expenses incurred by, Trustees in the performance of their duties as Trustees.  However, no person who already receives full-time pay from an Employer, an Association, or the Union may receive more than reimbursement for expenses properly and actually incurred.

PART II  PROCEDURE OF THE BOARD OF TRUSTEES
4.2.01  Acting only as a Body
       The Board of Trustees shall act only as a body at regular or special meetings, or by the written assent of all Trustees.

U.A. LOCAL NO. 343 PENSION TRUST FUND<br>TRUST AGREEMENT - Page 8

4.2.02  Calling of Meetings
        The Board of Trustees shall meet at least once quarterly, or more often if the business of the Trust Fund so requires. The Board of Trustees may appoint one of the Trustees, or the administrator of the Trust, as the person responsible for giving notice of the time of such meetings to the Trustees. Special meetings of the Board of Trustees may be held at the call of the Chairman or the Co-Chairman upon giving five (5) days written notice to all other Trustees. Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice, shall be a valid meeting.

4.2.03  Quorum
        A quorum of the Board of Trustees for the purpose of transacting business shall be one (1) Employee Trustee and one (1) Employer Trustee. Unless a quorum is present, no business shall be transacted.

4.2.04  Voting Procedures
        In all matters coming before the Board of Trustees, the Employer Trustees as a unit shall have one vote and the Employee Trustees as a unit shall have one vote. When voting as a unit, an Employer Trustee who is present may vote on behalf of any absent Employer Trustee(s). If the Employer Trustees cannot all agree as to how their vote shall be cast, then no vote shall be cast by them. An Employee Trustee who is present at a meeting may vote on behalf of any absent Employee Trustee(s), in the same manner as provided for Employer Trustees. In the event of a deadlock in a vote of the Board, the provisions for arbitration under Part 3 shall take effect.

PART III ARBITRATION
4.3.01  Resolution of Deadlocks
        In the event of a deadlock in a vote of the Board of Trustees on any matter within their power, either group of Trustees, Employer or Employee, may, by a majority vote, demand arbitration of the issue within ten (10) days of the occurrence of the deadlock.

4.3.02  Designation of an Arbiter
        By agreement of the Board of Trustees, the dispute may be submitted to a Board of Arbitration, consisting of an equal number of Employer and Employee Trustees and an impartial umpire, selected by the Board pursuant to its procedures in Section 4.2.04. In the absence of such agreement, the dispute shall be submitted to an impartial umpire alone, selected in like manner. That Board, or that impartial umpire sitting alone, is hereinafter referred to as the arbiter.

4.3.03  Effect of Further Deadlock
        If the Board of Trustees cannot agree on an impartial umpire within ten (10) days, or if a Board of Arbitration is unable to reach a decision within the proper time provided, either group of Trustees, Employer or Employee, may petition the United States District Court for the Northern District of California to appoint an impartial umpire to hear the matter alone.

### 4.3.04  Procedure for Arbitration

The Board of Trustees shall submit the motion or motions on which there was a deadlock to the arbiter for decision. The Board of Trustees may submit a statement of facts about the matter in dispute to the arbiter. If the Board of Trustees cannot agree upon a joint statement, each group of Trustees may prepare a separate statement of the dispute within ten (10) days after the deadlock arises. The arbiter shall decide the matter on the basis of the written statements unless one or both groups of Trustees demands a hearing. The decision of the arbiter shall be rendered within fifteen (15) days, or a longer time if so specified by the Board of Trustees. All other matters of procedure shall be decided by the arbiter.

### 4.3.05  Reimbursement of Costs

The Trust Fund shall reimburse the Employer Trustees and the Employee Trustees for all reasonable costs of such arbitration proceedings. The Employer Trustees collectively and the Employee Trustees collectively shall be entitled to include in such costs expert witness fees and the reasonable costs and fees of one attorney incurred in representing them. If a deadlock arises as to the reasonableness of any cost, the same arbiter as originally heard the dispute shall hear the dispute on the costs.

### 4.3.06  Power of the Arbiter

All matters within the power of the Board of Trustees, including but not limited to the administration of the Trust Fund and the Pension Plans, shall be subject to arbitration under this Part. No matter on which the Board of Trustees may make a final determination, including the administration of the Fund and the Pension Plans, shall be subject to any grievance or arbitration procedure in any Collective Bargaining Agreement. No other matter specifically subject to, or excluded from, the grievance or arbitration procedure of any Collective Bargaining Agreement shall be subject to arbitration under this Part. The arbiter shall be bound by the provisions of this agreement, by the Collective Bargaining Agreements, and by the detailed provisions of the Pension Plans. The arbiter shall have no authority to amend the terms of any of those documents, except that in a dispute between the Employer Trustees and the Employee Trustees as to an amendment or modification of a Pension Plan, the arbiter may amend the detailed provisions of that Plan.

### 4.3.07  Finality of Decisions of the Arbiter

The vote of a majority of the Board of Arbitration or the decision of the impartial umpire, if sitting alone, shall be final and binding upon the Board of Trustees, upon all parties to this agreement, and upon the participants or other beneficiaries hereunder.

## PART IV  DUTIES AND POWERS OF TRUSTEES

### 4.4.01  Adoption of Pension Plans

The Board of Trustees shall carry out the purposes of this Agreement by adopting, amending and modifying Pension Plans which comply with all applicable laws, including the requirements of Section 401 of the Internal Revenue Code, and all other applicable regulations of the Departments of the Treasury and Labor of the United States; and shall administer the Trust Fund and the Pension Plans. If the Board adopts

more than one Plan, the assets of each shall be segregated, and applied only to the respective Plan and to a proportional share of common expenses in the administration of the Fund. The Pension Plans shall determine all matters necessary for the provision of pensions on retirement to participants and related benefits to beneficiaries, except those matters determined by a Collective Bargaining Agreement. The benefits provided in the Plans shall be limited to those which may be provided on an actuarially sound basis. The Pension Plans and all amendments and modifications thereof shall be set forth in writing, and signed by the Chairman and Co-Chairman. The Trustees are expressly empowered to amend or terminate the Plans or to adopt other plans, provided that such other plans are in full compliance with applicable federal laws.

### 4.4.02  Finality of Decisions

Any decisions or determinations of the Board of Trustees, which are not inconsistent with this Agreement or with the Pension Plans, on any matter within their powers, including the adoption of any and all terms and provisions of the Pension Plans, and the rights of any Employee or any other person asserting a claim under a Plan, shall be final and binding upon all parties.

### 4.4.03  Accounting of the Trust

The Board of Trustees shall maintain proper books of account and records of its administration of the Trust. The Board shall also cause an annual audit to be made of the Fund by a certified public accountant, a copy of which shall be furnished to the parties hereto and be available at the principal office of the Pension Trust for inspection by persons who have a legal interest in the Trust Fund. Copies of such statements shall be delivered to the Union, the Associations, and to each Trustee within five (5) days after they are prepared.

### 4.4.04  Auditing of Employer Contributions

Upon notice in writing from the Board of Trustees or an authorized agent of the Board, each Employer shall permit any accountant appointed by the Board to enter upon his, her or its premises at a reasonable time during business hours, to examine and copy such books, records, or reports of such Employer as may be necessary to determine whether the employer is making full and prompt payment of all sums required to be paid by that Employer to the Fund. As the purpose of such an audit would be defeated if it were limited in any way, the Employer may not limit the scope of the audit to the records concerning those employees performing covered employment.

The parties agree that the following records are necessary for the completion of an audit pursuant to this section:

(a)    For a routine audit: the Employer's quarterly tax returns to the state and federal government, including California Form DE-3 and IRS Form 941; payroll journals; individual earnings records and time cards of all employees; general check register; reports of employee hours to all other trade unions and to all other employee benefit plans; and workers' compensation insurance reports for all employees.

(b)    Upon the accountant's certification that further records are necessary to complete an audit, any of the following documents as specified by the

auditor and approved by the Board of Trustees: general ledger, bank
statements, canceled checks, IRS Forms W-2, W-4, 1096, and 1099, cash
receipts journal, financial statements, invoices, contracts, income tax
returns, and any other records which the accountant deems necessary or
relevant to complete the audit.

The cost of the audit shall be borne by the employer if the audit reveals that the
Employer paid Contributions which were less than the amount due, by an amount equal
to the lesser of $500 or 5% of all contributions due for the period covered by the audit.
Any Employer who cancels an audit without at least two working days notice, or who
fails to provide the required documents, shall be liable for the costs caused by that delay
or that failure whether or not the audit reveals that any further Contributions were due.
If an Employer refuses the accountant entry for the purposes of an audit, the Trust Fund
may take legal action to compel entry, without regard to any grievance or arbitration
procedure in a Collective Bargaining Agreement, and the Employer shall pay all the
reasonable costs and legal fees incurred by the Trust Fund in compelling or obtaining
such an audit.

## 4.4.05  Insurance

The Board of Trustees is expressly empowered to purchase insurance, including
fidelity bonds, to cover liability or losses occurring by reason of the act or omission of
any individual Trustee, other fiduciary, or agent of the Trust Fund,  and shall secure
fidelity bonds for all fiduciaries and for all other people who handle money, as required
by the laws of the United States; provided, however, that such insurance must permit
recourse by the insurer against the Trustee or other fiduciary whose breach of a fiduciary
obligation results in such loss or liability.  Nothing herein shall be construed, however, to
prohibit any Trustee or other person or entity in a fiduciary relationship under the Trust
from purchasing insurance to cover liability for his or her own account; or the Union,
Employers, or Associations from purchasing insurance to cover liability of persons who
serve in a fiduciary capacity pursuant to appointment by them.

## 4.4.06  Selection of an Administrator

The Board of Trustees may, but need not, employ a person or entity to act as
Administrator of the Fund.  Such Administrator shall have no power, express or implied,
to establish, determine or interpret policy.  The Board of Trustees may reasonably dele-
gate their powers to the Administrator, to perform those tasks they deem necessary for
the administration of the Trust.

## 4.4.07  Selection of a Co-Trustee

The Board of Trustees may select a California Banking Institution which is a
member of a Federal Reserve Bank or which is subject to the supervision of the
Superintendent of Banks or the Comptroller of Currency to act as Co-Trustee, and shall
negotiate an agreement with such Co-Trustee under the terms of which said Co-Trustee
shall receive, on behalf of the Trust, all Employer Contributions payable by Employers
of this Trust.  The Board of Trustee may delegate appropriate fiduciary powers and
duties to the Co-Trustee, including, but not limited to, the following powers: to be co-
holder of title to any assets of the Trust; to make distributions from the Fund, pursuant

to instructions from, or other authority granted by, the Board of Trustees; and to make investments for the Fund, pursuant to instructions from the Board of Trustees or from an investment manager selected by the Board of Trustees.

4.4.08  Designated Powers of the Board of Trustees
        In addition to any powers enumerated elsewhere in this Agreement, or granted by law, the Board of Trustees shall have the following powers:
(a)   To adopt, amend, and terminate Pension Plans within their sole discretion, in any manner not inconsistent with this Trust Agreement or the Collective Bargaining Agreements, and to interpret any and all terms of the Pension Plans;
(b)   To pay or provide for the payment of pensions and related benefits as may be provided for in the Pension Plans, either through the direct distribution of benefits from the Fund to qualified participants and beneficiaries, or through the purchase of contracts of insurance or policies issued by licensed insurance carriers;
(c)   To verify claims for the payment of benefits and determine whether the conditions for the payment of benefits as set forth in the Pension Plans have been fulfilled;
(d)   To determine the manner of payment of benefits;
(e)   To decide all questions relating to eligibility, vesting credits, benefit credits, amount and kind of benefits, and any similar or related questions arising in the administration of this Trust Fund and the Pension Plans;
(f)   To delegate duties as the Board reasonably deems appropriate to individual Trustees, subcommittees of the Board, or to persons other than named fiduciaries;
(g)   To collect, receive, hold and disburse all sums of money which are payable to or by the Trust Fund, and to establish reserve funds as they deem necessary to provide for the administrative expenses and other obligations of the Trust Fund;
(h)   To deposit any funds received by the Trust Fund in such bank or banks as the Board of Trustees may select, and to withdraw such funds for the purposes permitted by this Agreement;
(i)   To pay out of the Fund such sums as may be necessary for the purposes of the Trust Fund, including all sums necessary to establish and administer the Trust;
(j)   To employ any persons or entities necessary to administer the Trust, including legal counsel, accountants, insurance consultants, administrators, actuaries, investment counsellors and any other expert and/or clerical assistants as the Board of Trustees in their discretion may deem necessary or appropriate, whether to perform tasks for the Trust Fund, or to render advice with respect to any responsibility of the Board; to pay or cause to be paid compensation and expenses in connection therewith; and to delegate any appropriate powers and duties to those parties, including fiduciary duties, to the extent permitted by the laws of the United States;
(k)   To employ an investment manager to manage the assets of the Fund;
(l)   To establish an administrative office, to lease, purchase or otherwise secure premises necessary for such purposes, to purchase, lease or otherwise acquire furniture, fixtures, equipment and supplies necessary or desirable for the maintenance of such offices and the administration of the Trust and the Plans;
(m)   To contract with the Union for services necessary for the administration of the Trust Fund, and to compensate it the costs and expenses for such services,

U.A. LOCAL NO. 343 PENSION TRUST FUND<br>
TRUST AGREEMENT - Page 13

including such pro rata part of its general operating costs as the Board of Trustees shall determine to result directly from the performance of services for the Trust Fund, provided that such compensation shall be on a strictly budgeted basis and accounted for periodically by the Union;

(n)    To invest or reinvest such portions of the Fund as are not required for current expenditures or reserves in any manner as appropriate under the standard of care required in this Agreement. Those investments may include every kind of property, real, personal or mixed, as may be legal for the investment of trust funds under the laws of the United States, particularly ERISA, as amended;

(o)    To sell, exchange, lease, convey and otherwise dispose of any property of the Fund, upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance in connection therewith, or to delegate in writing the power to execute such instruments to the Co-Trustee, Administrator, Chairman or Co-Chairman of the Board of Trustees, or other agents;

(p)    To pay or provide for the payment of all real and personal property taxes, and other taxes or assessments of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust, or any money or property forming a part thereof, or the Plans;

(q)    To enter into any and all contracts and agreements for the purpose of carrying out the terms of this Agreement, and for the administration of the Trust and the Pension Plans;

(r)    To maintain any and all actions or legal proceedings which may be deemed necessary for the protection of the Trust, the Fund, or the Board of Trustees, or to secure the payment of Employer Contributions to the Trust, or to effectuate the administration of the Trust or the Pension Plans, or to secure the benefits contemplated hereby, and in connection therewith to compromise, settle or release claims on behalf of or against the Trust Fund and/or the Board of Trustees; provided, however, that no such compromise or release shall in any way compromise, settle or release any Individual Employer from any liability incurred by breach of a Collective Bargaining Agreement, except as to the liability to this Trust Fund;

(s)    To receive separate supplemental contributions made upon behalf of employees in a collective bargaining unit represented by the Union; and

(t)    To adopt rules and regulations as appropriate for the administration of the Trust Fund and the Pension Plans and for any and all matters affecting the Trust Fund or the Pension Plans.

4.4.09  Reciprocity Agreements

The Board of Trustees shall have the power to enter into agreements with other qualified and exempt trust funds which provide the same or similar benefits as this Trust Fund, to permit the payment of Employer Contributions required under Collective Bargaining Agreements to be made to such other trust funds, for the benefit of any Employee who so requests. The amount of the Employer Contribution which may be paid to such other trust shall be limited to the amount required by collective bargaining agreements which require payment to those other funds, but in no event more than the Employer Contribution required by the Collective Bargaining Agreement under which

the Employee is working at the time, less 5% of the amount transferred to cover the cost of the transfer. However, no such agreement is valid unless it also provides that Employees for whose benefits contributions would be made to such other trust fund may elect to have those contributions made on their behalf to this Trust Fund.

### 4.4.10   Addition of Participants Not Represented by the Union

The Board of Trustees shall have the power to vote from time to time to permit participation of Employees working under the collective bargaining agreements of labor organizations other than the Union.  Participation on this basis will:

(a)   require a written request by the labor organization which will specify whether participants will be in the Defined Benefit Plan or the Defined Contribution Plan;

(b)   be limited to the Defined Contribution Plan unless the Plan Actuary certifies that addition of the bargaining unit(s) to the Defined Benefit Plan will have no adverse effect on the current participants or contributing employers;

(c)   be permitted only upon execution of a participation agreement by each employer, in a form approved by the Trustees; and

(d)   be subject to such other rules as are adopted from time to time by the Trustees.

### 4.4.11   General Powers of the Trustees

In addition to any powers specified in this Agreement, the Board of Trustees shall have such powers as may be necessary to carry out the purposes of this Trust and to discharge the obligations of the Trust and of the Board of Trustees.

### PART V - LIABILITY OF TRUSTEES

### 4.5.01   Standard of Care

The Trustees, in the performance of their duties, shall act solely in the interest of the participants and qualified beneficiaries of the Plans.  The Trustees shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in particular shall diversify the investments of the Trust Fund so as to minimize the risk of large losses unless under the circumstances it is clearly not prudent to do so.

### 4.5.02   Scope of Trustee Liability

Nothing in this Agreement shall be construed to enlarge the liabilities of the Trustees beyond what is required of them under the provisions of ERISA, as amended.  The Fund shall exonerate, reimburse, and hold harmless the Trustees individually and collectively against any and all liabilities and reasonable expenses arising out of the Trusteeship, including attorneys' fees for a defense against civil or criminal liability, to the fullest extent permitted by law, save and except as to the individual Trustee or Trustees, only such liabilities and expenses as may arise out of their failure to perform the duties of their trust as defined in the Act.

4.5.03  Non-Liability of the Parties

Neither the Associations nor any Individual Employer, nor the Union, shall be liable in any respect for any of the obligations or acts of the Board of Trustees or any particular Trustee, because any Trustee is in any way associated with such Associations, Individual Employer, or Union. In addition, neither the Associations nor any Individual Employer, nor the Union, shall be responsible or liable for:

    (a)    the validity of this Agreement or the Pension Plans;

    (b)    the form, validity, sufficiency, or effect of any Plan, contract or policy for pension benefits;

    (c)    any delay occasioned by any restriction or provision in this Agreement, the Pension Plans, or the rules and procedures of the Board of Trustees; provided, however, that this clause shall not excuse any violation of a Collective Bargaining Agreement; or

    (d)    the act or omission of any person or entity with respect to the making or retention of any deposit or investment of the Fund, or the disposition of any such investments, or any other loss or diminution of the Fund, except for the particular person or entity involved to the extent that such loss is due to the gross neglect or willful misconduct of such person.

4.5.04  Return of Trust Property

Any Trustee who resigns or is removed from office shall forthwith turn over to the Chairman or Co-Chairman of the Board any and all records, books, documents, monies, and other property in his possession or under his control which belong to the Board or the Fund, or which were received by him in his capacity as such Trustee.

## ARTICLE V - EXECUTION AND AMENDMENT OF THE AGREEMENT

5.01  Obligations of Parties and Successors

The terms of this Agreement shall be effective on the date it is fully executed by all of the Associations and the Union. This Agreement shall be binding on the Associations, the Union, the Individual Employers, and the Employees, and the successors, assigns, and personal representatives of all those parties, in perpetuity. However, the duration of the Trust Fund shall not exceed any period established by law.

5.02  Power to Amend

The parties to this Agreement shall have the power to amend it by mutual agreement, provided that no amendment may:

    (a)    alter the basic purposes of this Trust Fund or cause the assets of the Trust Fund to be diverted for any purposes other than those stated in Section 2.02;

    (b)    violate any applicable law or regulation or a provision of a Collective Bargaining Agreement, or cause any Employer Contribution to not be a deductible expense under the Internal Revenue Code.

Any amendment shall be effective as of the date on which it is approved in writing by the parties, or as of any other date selected by the parties as the circumstances require.

5.03  Termination of the Agreement

This Agreement may be terminated at any time by the Associations and the Union by an instrument in writing. If some but not all of the parties to this agreement cease to participate in the Trust Fund for any reason, the Trust Fund shall not terminate, but shall continue with the remaining parties and any additional or substitute parties as are required for continuation of the Trust Fund. The remaining parties may amend this Agreement as they deem necessary to reflect such changes of participation. If the obligation of all Individual Employers to make contributions shall terminate, the Trustees shall apply the assets of the Fund for the purposes stated in Section 2.02, and the Trust Fund shall terminate.

5.04  Distribution of Assets on Termination

In lieu of termination of the Trust Fund under Section 5.03, the Board of Trustees shall have the power, upon the request of the Union, to merge the Fund with another pension trust fund established by the Union and by employers of the employees represented by the Union, for the purpose of providing those benefits which the participants and beneficiaries would have received under the Pension Plans. The Board may also distribute any surplus assets to a successor qualified pension trust fund established by the Union and employers.

IN WITNESS THEREOF, the parties hereto have executed, by their officers or duly authorized representatives, this Agreement and Declaration of Trust on the dates indicated below.

Plumbing, Heating, and Cooling
Contractors of Napa, Solano
and Lake Counties

By _____

Date _____4-22-94_____

U. A. Local No. 343

By _____

Date _____4-22-94_____

Mechanical Contractors Association
of Northern California, Inc.

By _____

Date _____4-22-94_____

U. A. Local No. 355

By _____

Date _____5-5-94_____

Landscape Contractors Council
of Northern California

By _____

Date _____5-16-94_____

IN WITNESS OF THE EXECUTION OF THIS AGREEMENT AND
DECLARATION OF TRUST, the Trustees have subscribed their names to evidence
their acceptance of this Agreement and Declaration of Trust and their willingness to
serve and be bound as herein provided.

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

Linda Rossman

## NORTHERN CALIFORNIA AND NORTHERN NEVADA
## LANDSCAPE AND UNDERGROUND UTILITY
## JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND
## TRUST AGREEMENT

WHEREAS LOCAL UNION NO. 355 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, (hereinafter the Union), and the LANDSCAPE CONTRACTORS COUNCIL OF NORTHERN CALIFORNIA (LCCNC), the MECHANICAL ENGINEERING CONTRACTORS ASSOCIATION (MECA), and ASSOCIATED GENERAL CONTRACTORS (AGC) (hereinafter, collectively, the Association), are involved in landscape and underground utility piping work throughout the Northern California and Northern Nevada area; and

WHEREAS the provision of skilled journeymen to employers in this field would be beneficial to the Union, the Association, the Individual Employers, and the public at large; and

WHEREAS the Union and the Association intend to promote the education of, and to improve the skills of, the journeymen and apprentices in landscape and underground utility piping work; and

WHEREAS the establishment of a Landscape and Underground Utility Journeyman and Apprenticeship Program and other educational programs would help accomplish these goals;

It is therefore agreed that the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund be established by the parties signatory to this agreement to accomplish the goals expressed herein.

Exhibit D

## TABLE OF CONTENTS

**SECTION**                                                      **PAGE**

ARTICLE I - DEFINITIONS
1.1   UNION . . . . . . . . . . . . . . . . . . . . . . . . . .   1
1.2   ASSOCIATION . . . . . . . . . . . . . . . . . . . . . . .   1
1.3   COLLECTIVE BARGAINING AGREEMENT . . . . . . . . . . . .   1
1.4   INDIVIDUAL EMPLOYER . . . . . . . . . . . . . . . . . . .   1
1.5   EMPLOYEE  . . . . . . . . . . . . . . . . . . . . . . . .   1
1.6   BOARD OF TRUSTEES or BOARD . . . . . . . . . . . . . . .   1
1.7   FUND  . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ARTICLE II - GENERAL PROVISIONS
2.1   Establishment . . . . . . . . . . . . . . . . . . . . . .   1
2.2   Title to the Fund . . . . . . . . . . . . . . . . . . . .   2
2.3   Obligations of the Parties  . . . . . . . . . . . . . . .   2
2.4   Non-Liability of the Parties  . . . . . . . . . . . . . .   2
2.5   Fund  . . . . . . . . . . . . . . . . . . . . . . . . . .   2
2.6   Form and Manner of Contributions  . . . . . . . . . . .   3
2.7   Liabilities for Late Contributions  . . . . . . . . . .   3
2.8   Notice Requirements . . . . . . . . . . . . . . . . . . .   3
2.9   Governing Law . . . . . . . . . . . . . . . . . . . . . .   3
2.10  Principal Office  . . . . . . . . . . . . . . . . . . . .   4

ARTICLE III - BOARD OF TRUSTEES
3.1   Membership of the Board of Trustees . . . . . . . . . .   4
3.2   Acceptance of the Office of Trustee . . . . . . . . . .   4
3.3   Certification of Appointment  . . . . . . . . . . . . .   4
3.4   Officers of the Board . . . . . . . . . . . . . . . . . .   5
3.5   Term of Office  . . . . . . . . . . . . . . . . . . . . .   5
3.6   Resignation . . . . . . . . . . . . . . . . . . . . . . .   5
3.7   Removal . . . . . . . . . . . . . . . . . . . . . . . . .   5
3.8   Appointment of New Trustees . . . . . . . . . . . . . .   5

ARTICLE IV - FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES
4.1   Governance of the Trust by the Board of Trustees  .   5
4.2   Powers of the Board . . . . . . . . . . . . . . . . . . .   6
4.3   Power to Delegate . . . . . . . . . . . . . . . . . . . .   7
4.4   Fidelity Bonds  . . . . . . . . . . . . . . . . . . . . .   7
4.5   Authority to Spend the Fund . . . . . . . . . . . . . .   7
4.6   Maintenance of Records  . . . . . . . . . . . . . . . . .   7
4.7   Auditing of the Fund  . . . . . . . . . . . . . . . . . .   8

ARTICLE V - GENERAL PROVISIONS APPLICABLE TO TRUSTEES
5.1   Reliance on the Trust . . . . . . . . . . . . . . . . . .   8
5.2   Standard of Care of the Trustees  . . . . . . . . . . .   8
5.3   Limitation of the Trustees' Liability . . . . . . . .   8
5.4   Limitation of the Parties' Liability for Acts of
      the Trust . . . . . . . . . . . . . . . . . . . . . . . .   9
5.5   Non-Liability of the Parties for Acts of Their
      Appointees  . . . . . . . . . . . . . . . . . . . . . . .   9

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND
UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND
TRUST AGREEMENT**

**SECTION**                                                              **PAGE**

5.6  Reimbursement of the Trustees . . . . . . . . . . .   9
5.7  Return of Trust Property  . . . . . . . . . . . .   10
5.8  Insuring of the Trustees  . . . . . . . . . . . .   10

      ARTICLE V - PROCEDURE OF THE BOARD OF TRUSTEES
6.1  Acting Only as a Board  . . . . . . . . . . . .   10
6.2  Regular Meetings of the Board . . . . . . . . .   10
6.3  Special Meetings of the Board . . . . . . . . .   10
6.4  Quorum and Voting Procedures  . . . . . . . . .   10

            ARTICLE VII - ARBITRATION
7.1  Board Actions in the Event of a Deadlock  . . . .   11
7.2  Power to Provide Separate Statements  . . . . . .   11
7.3  Authority of the Umpire . . . . . . . . . . . .   11
7.4  Power to Petition the Court . . . . . . . . . .   12
7.5  Limitation on Arbitrability . . . . . . . . . .   12

ARTICLE VIII - EFFECTIVE DATE, AMENDMENT AND TERMINATION
8.1  Effective Date  . . . . . . . . . . . . . . . .   12
8.2  Power to Amend  . . . . . . . . . . . . . . . .   12
8.3  Substitution of Parties . . . . . . . . . . . .   12
8.4  Termination of the Trust Fund and Distribution of
     Assets  . . . . . . . . . . . . . . . . . . . .   13
8.5  Duration of the Trust . . . . . . . . . . . . .   13

## ARTICLE I - DEFINITIONS

1.1 UNION means U. A. Local Union No. 355 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, a labor organization as defined in the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 141, et seq.), or any successor union.

1.2 ASSOCIATION means the Landscape Contractors Council of Northern California (LCCNC), the Mechanical Engineering Contractors Association (MECA), and Associated General Contractors (AGC) (hereinafter, collectively, the Association).

1.3 COLLECTIVE BARGAINING AGREEMENT means any agreement entered into by the Union with any employer as defined in the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 141, et seq.), covering wages, rates of pay, hours of labor, or other conditions of employment, of employees represented for the purposes of collective bargaining by the Union, and which agreement provides for payment by the employer into this Fund.

1.4 INDIVIDUAL EMPLOYER means any person or entity, who or which is now, or hereafter may be, required to make payments into this Trust Fund, pursuant to a Collective Bargaining Agreement, pursuant to a DAS-7 Agreement or other agreement involving the California Division of Apprenticeship Standards or successor agency, or pursuant to any other agreement involving employment of persons participating in apprenticeship or other training programs.

1.5 EMPLOYEE means any employee of an Individual Employer whose work or work classification is covered by a Collective Bargaining Agreement with the Union.

1.6 BOARD OF TRUSTEES or BOARD means the Board of Trustees of the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund.

1.7 FUND means the Trust Fund created and governed by this Agreement.

## ARTICLE II - GENERAL PROVISIONS

2.1 Establishment

There is hereby created the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund. The Fund shall have as its sole purpose

the education and training of journeymen and apprentices in all phases of landscape and underground utility work.

## 2.2  Title to the Fund

The entire right, title and interest to the Trust and to the Fund is vested in the Board of Trustees.  Neither the Board of Trustees nor any individual Trustee shall have any powers, duties or liabilities with respect to the Trust or the Fund except as specified in this Agreement. Neither the Individual Employers, nor the Association, nor the Union, nor any Employee, nor any other person or entity shall have any right, title or interest in the Fund other than as specifically provided in this Agreement.  No part of the Fund shall revert to the Union, the Association, any Individual Employer, or any Employee.  Neither the Fund nor any payment required to be made to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of the Association, any Individual Employer, the Union, any Employee or any other person or entity.  No part of the Fund, nor any benefit shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person, except in satisfaction of the Fund's own debts.

## 2.3  Obligations of the Parties

Subject to any applicable provisions of any Collective Bargaining Agreements, the rights and duties of all parties, including the Association, the Individual Employers, the Union, the Employees, the participants in any apprenticeship or training program, and the Trustees shall be governed by the provisions of this Agreement.

## 2.4  Non-Liability of the Parties

Neither the Association, the Individual Employers, the Union, nor any Employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Board.

## 2.5  Fund

The Fund shall consist of all payments made into the Fund pursuant to a Collective Bargaining Agreement, to DAS-7 agreements, or other such agreements involving the California Department of Apprenticeship Standards, and to any other agreement requiring contributions to be made to this Fund, and all money received from other sources by any other lawful means, together with all interest, income and other returns thereon of any kind whatsoever. Neither the Association, nor any officer, agent, Employee, committee member, or member of an Association shall be liable to make any contributions into the Fund, except to the extent that any Individual Employer may be required to make contributions to the Fund with respect to his individual operations pursuant to a Collective Bargaining Agreement, pursuant to an agreement with the Trust Fund, or under one of the Trust Fund's programs.

NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT

2                                                JUNE, 1992

2.6  <u>Form and Manner of Contributions</u>
Contributions into the Fund shall be due and payable at the principal office of the Fund in such installments and at such times as the Board shall from time to time direct.  Each installment shall be accompanied by a report in such form as the Board may from time to time direct.

2.7  <u>Liabilities for Late Contributions</u>
Insofar as payment of contributions by the Individual Employers and Union into this Fund are concerned, time is of the essence. The parties nevertheless recognize and acknowledge that it would be extremely difficult, if not impossible, to fix the actual expense and damage to this Fund and to covered Employees which would result from the failure of an Individual Employer to make a monthly payment of contributions promptly and in full within the time provided.  It is therefore agreed that if an Individual Employer fails to pay his contributions to the Fund in full on or before the due date fixed by the Board, there shall be added by way of liquidated damages, and not as a penalty, ten percent (10%) of the contributions due.  If that Employer then fails to pay all liabilities due, including the liquidated damages, before the first of the next month, there shall be added additional liquidated damages of ten percent (10%).  In addition, all late contributions and all liquidated damages shall bear interest at the rate of twelve percent (12%) per annum until paid.

In addition to the contributions due and the liquidated damages provided for in this Section, there shall be added all reasonable costs incurred by the Fund in the collection of the delinquent payments, including but not limited to reasonable attorney's fees, accounting costs, and costs of legal actions.

It shall not be a violation of any Collective Bargaining Agreement for the Union to refuse to man any job or to withdraw Employees from the job or jobs of any delinquent Individual Employer.

2.8  <u>Notice Requirements</u>
Any notice required to be given under the terms of this Agreement shall be deemed to have been duly given if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid, to such person at his last known address.

2.9  <u>Governing Law</u>
The interpretation of this Agreement shall be governed by the laws of the United States, and this Agreement and the Plan shall be construed to be in accordance with those laws if at all possible. In the event that any section of this Agreement becomes illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Agreement unless such illegality or invalidity prevents the Board of Trustees from accomplishing the

purposes of the Trust.  In that case, the parties to this Agreement shall take whatever steps are necessary to preserve this Trust Fund, including, but not limited to, amending this Agreement to eliminate the illegality or invalidity.

2.10 <u>Principal Office</u>
     The Board of Trustees and Fund shall have their principal offices at such place as the Board may designate from time to time.

**ARTICLE III - BOARD OF TRUSTEES**

3.1  <u>Membership of the Board of Trustees</u>
     The Fund shall be administered by a Board which shall consist of three (3) Trustees representing the Individual Employers (hereinafter called Employer Trustees) and three (3) Trustees representing the Employees (hereinafter called Employee Trustees). The three Employer Trustees shall be appointed as follows:  one by Landscape Contractors Council of Northern California, one by Mechanical Engineering Contractors Association, and one by Associated General Contractors.  The three Employee Trustees shall be appointed by the Union.

     The following named persons shall serve as initial Trustees, and shall continue as Trustees until successor Trustees are appointed as hereinafter provided:

|      EMPLOYER TRUSTEES      |      EMPLOYEE TRUSTEES      |
|-----------------------------|----------------------------|
|                             | Dennis Soares              |
|                             |                            |
|                             |                            |

3.2  <u>Acceptance of the Office of Trustee</u>
     All initial Trustees and any and all successor Trustees shall sign this Trust Agreement, or any counterpart thereof.  Such signature, upon delivery to the Board, shall constitute their acceptance of the office and their agreement to act under and to be subject to all of the terms and conditions of this Trust Agreement and any amendment or amendments thereof.

3.3  <u>Certification of Appointment</u>
     The appointment of each Employer Trustee shall be signed by the appointing Association's President and delivered to the Board. The appointment of each Employee Trustee shall be signed by the Business Manager of the Union, and delivered to the Board.

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND
UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND
TRUST AGREEMENT**
4                                    JUNE, 1992

3.4  Officers of the Board
     The Board shall select one of their number to act as Chairman
of the Board and one to act as Co-Chairman, to serve for such
period as the Board shall determine.  When the Chairman is selected
from among the Employer Trustees, the Co-Chairman shall be selected
from among the Employee Trustees, and vice-versa.  The Board shall
also appoint a Secretary, who shall keep minutes or records of all
meetings, proceedings, and acts of the Board.  Such minutes need
not be verbatim.

3.5  Term of Office
     Each Trustee shall serve for such term of office as provided
in the By-laws or other governing instrument of their respective
organizations.

3.6  Resignation
     A Trustee may resign, at any time, by serving written notice
of such resignation upon the Chairman or Co-Chairman of the Board.
Such notice is to be served at least thirty (30) days prior to the
date on which such resignation is to be effective, unless the
resigning Trustee has good cause for a shorter period of time.

3.7  Removal
     A Trustee may be removed from office at any time, for any
reason, in the manner in which he was appointed.

3.8  Appointment of New Trustees
     If any Trustee dies, resigns, or is removed from office, a
successor Trustee shall be appointed by the same organization that
appointed the original Trustee in the same manner as provided in
Section 3.1.  In the event that the proper organization does not
appoint a successor Trustee within thirty (30) days, the other
Trustees from the same group as the original Trustee, Employer or
Employee, shall appoint a temporary Trustee who is a member of the
same organization as the former Trustee.  This appointment shall
last only until the organization which appointed the former Trustee
appoints a successor.

### ARTICLE IV - FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES

4.1  Governance of the Trust by the Board of Trustees
     The Board shall have the power and duty to administer the Fund
for the purpose of educating and training persons in all phases of
the landscape and underground utility industry.  In pursuit of that
goal, the Board shall take whatever steps it reasonably deems
appropriate to establish a Utility Pipeline Installers Program or
other training programs in the Northern California and Northern
Nevada area, including, but not limited to: a) establishment, by
lease or purchase, of one or more training school locations; b)
establishment of Apprenticeship Training Standards; and, c)
purchase of all necessary training equipment and supplies.

4.2  <u>Powers of the Board</u>

The Board shall have all general and incidental powers and duties appropriate to the performance of their duties, including without limitation of the foregoing, the following powers and duties:

(a)  To claim, demand, collect, receive, sue for and hold all payments of money due this Fund by Individual Employers and all income and increments thereof, and to deposit all such payments collected or received by the Fund in an account in the name of the Fund in such bank or banks as the Board shall from time to time determine.

(b)  To enter into contracts or to terminate, modify, or renew any contracts, and to exercise and claim all rights and benefits granted to the Board or the Fund by any contracts.  Any contract shall be executed in the name of the Fund, or the Board.

(c)  To establish and accumulate such reserve funds as may be adequate to provide for the maintenance in effect of an education and training program and administration expenses and other obligations of the Fund.

(d)  To employ such executive, consultant, administrative, cleri-cal, secretarial, accountant, and legal personnel and other employees and assistants as may be necessary, in connection with the administration of the Fund or any apprenticeship and training program, and to pay or cause to be paid out of the Fund the compensation and necessary expenses of administra-tion.

(e)  To incur and pay out of the Fund any expense reasonably incidental to the administration of the Fund or any appren-ticeship and training program, including any reasonable expense incurred in the establishment of this Trust Agreement, the Fund or the program.

(f)  To compromise, settle or release claims or demands in favor of or against the Fund on such terms and conditions as the Board may deem desirable.  However, no such compromise, settlement, or release of any claim or demand shall in any way compromise, settle, or release any Individual Employer or the Association from any liability incurred by any or all of them by reason of any breach of any Collective Bargaining Agreement, except for liability to this Fund for failure to pay required contribu-tions.

(g)  To invest and reinvest from time to time such portion of the Fund as is not required for current expenditures and charges.

(h)  To adopt rules and regulations from time to time for the administration of an apprenticeship and training program.

(i)  To borrow money upon such terms and conditions as the Board of Trustees shall determine, for any purpose which the Board reasonably determines to be useful for the promotion of the purposes of the Fund.

(j)  To sell, purchase, lease, encumber, or otherwise acquire or dispose of real or personal property upon such terms and conditions as the Board shall determine.

4.3  Power to Delegate
In carrying out the duties imposed upon them by this Article, the Board of Trustees may:

(a)  Employ qualified professional consultants to advise them with respect to their responsibilities under this Trust Agreement and the Plan;

(b)  Upon the advice of such consultants, allocate specific duties, responsibilities, or obligations to members of the Board or to persons other than named fiduciaries; and

(c)  Appoint a co-trustee or an investment manager to manage any assets of the Fund.

4.4  Fidelity Bonds
The Board shall provide for fidelity bonds in amounts equal to ten (10%) per cent of the Funds handled, but in no event less than $1,000.00 nor more than $500,000.00, for Trustees or other persons who shall be authorized to receive or withdraw money from or for the Fund.  The cost of such bonds shall be a proper charge against the Fund.

4.5  Authority to Spend the Fund
Checks, drafts, vouchers, or other withdrawals of money from the Fund may be signed only by a person or persons authorized by the Board to sign or countersign.

4.6  Maintenance of Records
The Board shall maintain suitable and adequate records of and for the administration of the Fund and of any apprenticeship or training programs.  The Board may require the Association, the Individual Employers, the Union, or any participant in any apprenticeship or training program to submit to it any information, data, report, or document reasonably relevant to and suitable for the purposes of such administration, except that the Union cannot be required to submit a membership list.  Upon notice in writing from the Board, an Individual Employer must permit a Certified Public Accountant, representing the Board, to enter upon the premises of such Employer at reasonable time or times during

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**

JUNE, 1992

regular business hours, for the purpose of examining and copying any books, records, documents or reports of such Individual Employer, for the purpose of determining that full, prompt and regular payment of all sums required to be paid by him or it to the Fund have been paid.

4.7   Auditing of the Fund
      The books of account and records of the Board, including the books of accounts and records pertaining to the Fund, shall be audited at least once each year by a Certified Public Accountant selected by the Board.  The Board shall also make all other reports required by law.  A statement of the results of the annual audit shall be available for inspection by persons with a legal interest in the Fund at the principal offices of the Trust and at each other suitable place as the Board may designate from time to time. Copies of such statements shall be delivered to the Association, the Union and each Trustee.


                ARTICLE V - GENERAL PROVISIONS APPLICABLE TO TRUSTEES

5.1   Reliance on the Trust
      No person or entity that has verified that he or it is dealing with a duly appointed and authorized Trustee, or any authorized delegate, shall be obligated to see to the application of any money or property of the Fund, or that the terms of this Agreement have been complied with, or to inquire as to the necessity or expediency of any act of the Board.  Every instrument executed by the Board or at its direction shall be conclusive in favor of every person who relies on it, that:

(a)   At the time of the delivery of the instrument, this Trust Agreement was in full force and effect;

(b)   The instrument was executed in accordance with the terms and conditions of this Agreement; and

(c)   The Board was duly authorized to execute the instrument or direct its execution.

5.2   Standard of Care of the Trustees
      The duties, liabilities and responsibilities of the Trustees shall be as provided in this Trust Agreement. The Trustees in the performance of their duties shall use the same care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims.

5.3   Limitation of the Trustees' Liability
      Nothing in this Agreement shall be construed to enlarge the liabilities of the Trustees beyond what is required of them under the provisions of the Employees Retirement Income Security Act of

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**

1974, as amended.  The Fund shall exonerate, reimburse, and save harmless the Trustees individually and collectively against any and all liabilities and reasonable expenses arising out of their performance of their duties as Trustees, except the liabilities and expenses of any individual Trustee which arose out of the failure to perform the duties of Trustee as defined in the Act.

5.4  <u>Limitation of the Parties' Liability for Acts of the Trust</u>
     Neither the Association, the Individual Employers, the Union, nor any of the Trustees shall be responsible or liable for any of the following:

(a)  The validity of this Trust Agreement or of any apprenticeship and training program;

(b)  The form, validity, sufficiency, or effect of any contract which may be entered into;

(c)  Any delay occasioned by any restriction or provision in this Trust Agreement, in the apprenticeship and training programs, in the rules and regulations of the Board issued hereunder, in any contract procured in the course of the administration of the apprenticeship and training programs or Fund, or in any policy or proper procedure in such administration; provided, however, that this clause shall not excuse any violation of any Collective Bargaining Agreement; or

(d)  The making or retention of any deposit or investment of the Fund, the disposition of any such investment, the failure to make any investment of the Fund, or any loss or diminution of the Fund, except as to the particular person involved to the extent that such loss was due to a breach of fiduciary responsibility of such person.

5.5  <u>Non-Liability of the Parties for Acts of Their Appointees</u>
     Neither the Association, the Individual Employers, nor the Union shall be liable in any respect for any of the obligations or acts of the Board or a Trustee or Trustees because any Trustee is in any way associated with that Association, Individual Employer, or Union.

5.6  <u>Reimbursement of the Trustees</u>
     Each Trustee shall be reimbursed out of the Fund for all expenses properly and actually incurred in the performance of his duties for the Trust.  In addition thereto, any Trustee who is not already receiving full-time pay from an Association, an Individual Employer, or the Union, shall receive reasonable compensation for time actually spent in the performance of his duties for the Trust, not in excess of eight (8) hours in any one day, at the current straight time rate for journeymen in effect at the time; provided however, that verified vouchers showing the time so spent must be submitted and approved before payment is made.

5.7  <u>Return of Trust Property</u>
     Any Trustee who resigns or is removed from office shall
forthwith turn over to the Chairman or Co-Chairman of the Board any
and all records, books, documents, money and other property in his
possession or under his control which belong to the Board or the
Fund or which were received by him in his capacity as such Trustee.

5.8  <u>Insuring of the Trustees</u>
     The Trust Fund and the Board of Trustees, as such, are
expressly empowered to purchase insurance to cover liability or
losses occurring by reason of the act or omission of any Trustee or
other fiduciary; provided, however that such insurance must permit
recourse by the insurer against the Trustee or other fiduciary
whose breach of a fiduciary obligation results in such loss or
liability.  Nothing herein shall be construed, however, to prohibit
any Trustee or other fiduciary from purchasing insurance, or waiver
of recourse, to cover liability for his or her account, or the
Union or an Association, from purchasing insurance or waiver of
recourse to cover liability of any person who serves in a fiduciary
capacity pursuant to appointment by them.


                **ARTICLE V - PROCEDURE OF THE BOARD OF TRUSTEES**

6.1  <u>Acting Only as a Board</u>
     The Board of Trustees may take actions affecting the Trust
only as a Board.  All actions must be taken at a regular meeting,
at a special meeting, or in writing without a meeting, provided
that such written action has the affirmative concurrence in writing
of all Trustees.

6.2  <u>Regular Meetings of the Board</u>
     Ordinary business of the Trust shall be conducted at regular
meetings, in accordance with a schedule established by the Board.
Regular meetings of the Board shall be held at the principal office
of the Board and Fund unless another place is designated from time
to time by the Board.

6.3  <u>Special Meetings of the Board</u>
     Either the Chairman or the Co-Chairman or any four (4) members
of the Board of Trustees may call a special meeting of the Board of
Trustees by giving written notice to all other Trustees of the time
and place of such meetings at least five (5) days before the date
set for the meeting.  Any such notice of special meeting shall be
sufficient if sent by ordinary mail or by wire addressed to the
Trustees at the address last shown in the records of the Board.

6.4  <u>Quorum and Voting Procedures</u>
     No business may be conducted at any regular or special meeting
of the Board unless there is a quorum of at least four (4)
Trustees, including at least two Employee Trustees and two Employer
Trustees.  When a matter comes to a vote, only the Chairman and Co-

Chairman shall vote, or a substitute chosen for that meeting by the members of the group of which the absent officer is a member. The Chairman and Co-Chairman shall each vote as instructed by a majority of the group of Trustees which he or she represents; if a group is unable to reach a majority, the officer representing that group shall decide how to vote. If the Board is deadlocked on a decision, it shall arbitrate the decision, according to Article VII.

## ARTICLE VII - ARBITRATION

7.1  Board Actions in the Event of a Deadlock
     In the event that the Board deadlocks on any matter subject to determination by the Board, the Board shall, within ten (10) calendar days thereafter, agree upon an impartial umpire to decide the dispute and submit a written, joint statement to the umpire on which he or she shall evaluate the facts of the dispute.

(a)  By agreement of the Board of Trustees, the dispute may be submitted to a Board of Arbitration consisting of the umpire and an equal number of representatives from both Trustee groups. The decision of a majority of this Board of Arbitration shall be final and binding upon each Trustee, the Board, the Union, the Association, and Individual Employers and other parties to this Agreement or to any apprenticeship and training program.

(b)  In the absence of such mutual agreement, the dispute shall be submitted to the impartial umpire alone. The decision of the impartial umpire shall be final and binding upon each Trustee, the Board, the Union, the Association, Individual Employers and all other parties to this Agreement and or to any apprenticeship and training program.

(c)  To facilitate the resolution of deadlocks, the Board may appoint a permanent umpire and establish a special procedure for all deadlocks, except, however, either group of Trustees may, by a majority vote, require the abandonment of the permanent umpire and special procedure in any particular case.

7.2  Power to Provide Separate Statements
     If the Board of Trustees cannot agree upon a joint statement presenting said matter to the umpire, each group of Trustees shall prepare and state in writing their version of the dispute and the question or questions involved, within ten (10) calendar days after said disagreement.

7.3  Authority of the Umpire
     In making his or her decision, the impartial umpire shall be bound by the provisions of this Trust Agreement and of the

applicable Collective Bargaining Agreements, and shall have no authority to alter or amend the terms of those agreements.

### 7.4   Power to Petition the Court

If no agreement on the designation of an impartial umpire is reached within five (5) calendar days, or the dispute is not resolved in the manner and within the time provided or within such further time as the Board of Trustees may allow for either such purpose, either group of Trustees may petition the United States District Court for the Northern District of California to appoint an impartial umpire to resolve the dispute.

### 7.5   Limitation on Arbitrability

No matter which is subject to arbitration under this Article, including the administration of the Trust or of the Fund or of any apprenticeship or training program, shall be subject to the grievance procedure or any other arbitration procedure provided in any Collective Bargaining Agreement.  No other matter subject to or specifically excluded from the grievance procedure of any Collective Bargaining Agreement shall be subject to arbitration under this Article.

## ARTICLE VIII - EFFECTIVE DATE, AMENDMENT AND TERMINATION

### 8.1   Effective Date

This Trust Agreement shall be effective immediately upon the execution of this agreement by the Union and the Association.  The execution, amendment, or termination of this Trust shall not affect the obligation of Individual Employers to make contributions in accordance with applicable Collective Bargaining Agreements.

### 8.2   Power to Amend

The provisions of this Trust Agreement may be amended or modified at any time by mutual agreement of the Association and the Union, subject to the applicable terms and conditions of any Collective Bargaining Agreement and any applicable law or regulation.

### 8.3   Substitution of Parties

This Agreement shall be binding on all Individual Employers who are now, or hereafter may become, a party to, or bound by, any Collective Bargaining Agreement requiring payment into this Fund, and their heirs, executors, administrators, successors, purchasers, and assigns, and on the employees, the participants in any apprenticeship or training program, the Association, and the Union. If a party to this Agreement ceases to exist or otherwise withdraws from participation in this Trust, and the remaining party or parties find that substitution of a new party is essential or beneficial to the Trust, that party may permit such other parties to participate in an appropriate capacity.  The parties may permit a new Union or new Association to join this Agreement at any time,

and amend the number of Trustees and manner of voting as necessary to accommodate the new organization. New parties shall be bound to the terms of this Agreement as if they were original signatories.

### 8.4  Termination of the Trust Fund and Distribution of Assets

In the event that the obligation of all Individual Employers to make contributions shall terminate, or upon any liquidation of the Fund, the Board of Trustees shall take the necessary steps to wind up the Trust Fund, and this Trust Agreement shall terminate. Upon the written request of the Union and the approval of a majority of the Board, and after sufficient funds to pay all obligations of the Trust have been set aside or other arrangements made for that purpose, the Board shall turn over any surplus money and property in the Fund to any Journeyman and Apprenticeship Training Trust Fund or other appropriate trust fund that may be created by the Union, or the Employees whom it represents, and Employers. If no such request is forthcoming, the Board shall apply the remainder of the Fund to the purposes specified in Section 2.1 of this Agreement.

### 8.5  Duration of the Trust

The parties intend that this Trust shall last in perpetuity. However, in no event shall this Trust continue for a period longer than is permitted by law.

IN WITNESS of the execution of this Agreement establishing the Northern California and Northern Nevada Utility Landscape and Underground Journeyman and Apprenticeship Training Trust Fund on the _____ day of _____, 1992, we hereby affix our signatures, as representatives of the designated parties. This Agreement may be executed in counterpart by the parties hereto and by the Trustees in acceptance of the duties hereunder.

LOCAL UNION NO. 355,
UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING
AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO

_____

_____

LANDSCAPE CONTRACTORS COUNCIL
OF NORTHERN CALIFORNIA

_____

_____

MECHANICAL ENGINEERING CONTRACTORS ASSOCIATION

_____

_____

ASSOCIATED GENERAL CONTRACTORS

_____

_____

NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND
UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND
TRUST AGREEMENT
14                          JUNE, 1992

IN WITNESS of the execution of this Agreement establishing the Northern California and Northern Nevada Utility Landscape and Underground Journeyman and Apprenticeship Training Trust Fund on the _____ day of _____, 1992, we hereby affix our signatures, as representatives of the designated parties. This Agreement may be executed in counterpart by the parties hereto and by the Trustees in acceptance of the duties hereunder.

LOCAL UNION NO. 355,
UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING
AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO

_____

_____

LANDSCAPE CONTRACTORS COUNCIL
OF NORTHERN CALIFORNIA

_____

_____

MECHANICAL ENGINEERING CONTRACTORS ASSOCIATION

_____

_____

ASSOCIATED GENERAL CONTRACTORS

_____

_____

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**
14                                          JUNE, 1992

IN WITNESS of the execution of this Agreement establishing the Northern California and Northern Nevada Utility Landscape and Underground Journeyman and Apprenticeship Training Trust Fund on the ___13___ day of ____July_____, 1992, we hereby affix our signatures, as representatives of the designated parties. This Agreement may be executed in counterpart by the parties hereto and by the Trustees in acceptance of the duties hereunder.

LOCAL UNION NO. 355,
UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING
AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO

_____

_____

LANDSCAPE CONTRACTORS COUNCIL
OF NORTHERN CALIFORNIA

_____

_____

MECHANICAL ENGINEERING CONTRACTORS ASSOCIATION

___Gary L. Andrews, President___

ASSOCIATED GENERAL CONTRACTORS

_____

_____

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**
14                                                      JUNE, 1992

IN WITNESS of the execution of this Agreement establishing the Northern California and Northern Nevada Utility Landscape and Underground Journeyman and Apprenticeship Training Trust Fund on the ___31___ day of _____August_____, 1992, we hereby affix our signatures, as representatives of the designated parties.   This Agreement may be executed in counterpart by the parties hereto and by the Trustees in acceptance of the duties hereunder.

LOCAL UNION NO. 355,
UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING
AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO

_____

_____

LANDSCAPE CONTRACTORS COUNCIL
OF NORTHERN CALIFORNIA

_____

_____

MECHANICAL ENGINEERING CONTRACTORS ASSOCIATION

_____

_____

ASSOCIATED GENERAL CONTRACTORS

_____
Executive Director

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**

IN ACCEPTANCE of the position of Trustee of the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund, as established by this Agreement, we hereby affix our signatures.

EMPLOYER TRUSTEES                     EMPLOYEE TRUSTEES

_____          _Mike Beavers_____

_____          _Dennis Soares_____

_____          _____

_____          _____

IN ACCEPTANCE of the position of Trustee of the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund, as established by this Agreement, we hereby affix our signatures.

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

_____      _____
Gary L. Andrews, President

_____      _____

_____      _____

_____      _____

**NORTHERN CALIFORNIA AND NORTHERN NEVADA LANDSCAPE AND UNDERGROUND UTILITY JOURNEYMAN AND APPRENTICESHIP TRAINING TRUST FUND TRUST AGREEMENT**
15                                    JUNE, 1992

IN ACCEPTANCE of the position of Trustee of the Northern California and Northern Nevada Landscape and Underground Utility Journeyman and Apprenticeship Training Trust Fund, as established by this Agreement, we hereby affix our signatures.

<u>EMPLOYER TRUSTEES</u>                    <u>EMPLOYEE TRUSTEES</u>

_____          _____

_____          _____

_____          _____

_____          _____

### U. A. LOCAL NO. 355
### LABOR-MANAGEMENT COOPERATION COMMITTEE TRUST FUND
### TRUST AGREEMENT

WHEREAS U. A. LOCAL NO. 355 (hereinafter the Union) and the SOLANO MECHANICAL CONTRACTORS ASSOCIATION (hereinafter the Association) have entered into a Collective Bargaining Agreement, and from time to time will continue to enter into Collective Bargaining Agreements and amendments thereto, and

WHEREAS those Collective Bargaining Agreements do, and will, provide for employer contributions to a Labor-Management Cooperation Committee Trust Fund, established pursuant to the provisions of Section 302(c)(9) of the Labor Management Relations Act of 1947, as amended (29 U.S.C. Section 186(c)(9)), for the purposes and objectives provided in the Labor-Management Cooperation Act of 1978 (29 U.S.C. Section 175a),

IT IS HEREBY AGREED THAT parties signatory hereto establish the U. A. Local No. 355 Labor-Management Cooperation Committee Trust Fund, to accomplish the purposes expressed herein.

APRIL, 1989



Exhibit E

## TABLE OF CONTENTS

**SECTION**                                                              **PAGE**

ARTICLE I - DEFINITIONS
    1.1  UNION . . . . . . . . . . . . . . . . . . . . . . . .  1
    1.2  ASSOCIATION . . . . . . . . . . . . . . . . . . . . .  1
    1.3  COLLECTIVE BARGAINING AGREEMENT . . . . . . . . . . .  1
    1.4  INDIVIDUAL EMPLOYER . . . . . . . . . . . . . . . . .  1
    1.5  EMPLOYEE  . . . . . . . . . . . . . . . . . . . . . .  1
    1.6  BOARD OF TRUSTEES or BOARD  . . . . . . . . . . . . .  1
    1.7  FUND  . . . . . . . . . . . . . . . . . . . . . . . .  1

ARTICLE II - GENERAL PROVISIONS
    2.1  Establishment of the Fund . . . . . . . . . . . . . .  1
    2.2  Purposes of the Fund  . . . . . . . . . . . . . . . .  1
    2.3  Title to the Fund . . . . . . . . . . . . . . . . . .  2
    2.4  Rights of the Parties . . . . . . . . . . . . . . . .  2
    2.5  Obligations of the Parties  . . . . . . . . . . . . .  2
    2.6  Non-Liability of the Parties  . . . . . . . . . . . .  3
    2.7  Form and Manner of Contributions  . . . . . . . . . .  3
    2.8  Liability for Late Contributions  . . . . . . . . . .  3
    2.9  Notice Requirements . . . . . . . . . . . . . . . . .  3
    2.10 Governing Law . . . . . . . . . . . . . . . . . . . .  4
    2.11 Principal Office  . . . . . . . . . . . . . . . . . .  4

ARTICLE III - BOARD OF TRUSTEES
    3.1  Membership of the Board of Trustees . . . . . . . . .  4
    3.2  Acceptance of the Office of Trustee . . . . . . . . .  4
    3.3  Certification of Appointment  . . . . . . . . . . . .  5
    3.4  Officers of the Board . . . . . . . . . . . . . . . .  5
    3.5  Term of Office  . . . . . . . . . . . . . . . . . . .  5
    3.6  Resignation . . . . . . . . . . . . . . . . . . . . .  5
    3.7  Removal . . . . . . . . . . . . . . . . . . . . . . .  5
    3.8  Appointment of New Trustees . . . . . . . . . . . . .  5

ARTICLE IV - FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES
    4.1  Governance of the Trust by the Board of Trustees  .  6
    4.2  Powers of the Board . . . . . . . . . . . . . . . . .  6
    4.3  Power to Delegate . . . . . . . . . . . . . . . . . .  7
    4.4  Fidelity Bonds  . . . . . . . . . . . . . . . . . . .  7
    4.5  Authority to Spend the Fund . . . . . . . . . . . . .  8
    4.6  Maintenance of Records  . . . . . . . . . . . . . . .  8
    4.7  Auditing of the Fund  . . . . . . . . . . . . . . . .  8

ARTICLE V - GENERAL PROVISIONS APPLICABLE TO TRUSTEES
    5.1  Reliance on the Trust . . . . . . . . . . . . . . . .  8
    5.2  Standard of Care of the Trustees  . . . . . . . . . .  9
    5.3  Limitation of the Trustees' Liability . . . . . . . .  9

**SECTION**                                                                          **PAGE**

    5.4  Limitation of the Parties' Liability for Acts of the
         Trust . . . . . . . . . . . . . . . . . . . . . .    9
    5.5  Non-Liability of the Parties for Acts of Their
         Appointees . . . . . . . . . . . . . . . . . .    10
    5.6  Reimbursement of the Trustees . . . . . . . . . .    10
    5.7  Return of Trust Property  . . . . . . . . . . . .    10
    5.8  Insuring of the Trustees  . . . . . . . . . . . .    10

ARTICLE V - PROCEDURE OF THE BOARD OF TRUSTEES
    6.1  Acting Only as a Board  . . . . . . . . . . . . .    11
    6.2  Regular Meetings of the Board . . . . . . . . . .    11
    6.3  Special Meetings of the Board . . . . . . . . . .    11
    6.4  Quorum and Voting Procedures  . . . . . . . . . .    11

ARTICLE VII - ARBITRATION
    7.1  Board Actions in the Event of a Deadlock  . . . .    11
    7.2  Power to Provide Separate Statements  . . . . . .    12
    7.3  Authority of the Umpire . . . . . . . . . . . . .    12
    7.4  Power to Petition the Court . . . . . . . . . . .    12
    7.5  Limitation on Arbitrability . . . . . . . . . . .    12

ARTICLE VIII - EFFECTIVE DATE, AMENDMENT AND TERMINATION
    8.1  Effective Date  . . . . . . . . . . . . . . . . .    13
    8.2  Power to Amend  . . . . . . . . . . . . . . . . .    13
    8.3  Substitution of Parties . . . . . . . . . . . . .    13
    8.4  Termination of the Trust Fund and Distribution of
         Assets . . . . . . . . . . . . . . . . . . . . .    13
    8.5  Duration of the Trust . . . . . . . . . . . . . .    14

**U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND TRUST AGREEMENT**

April, 1989

## ARTICLE I - DEFINITIONS

1.1  UNION means U. A. Local Union No. 355 of the United Associa-
tion of Journeymen and Apprentices of the Plumbing and
Pipefitting Industry of the United States and Canada, AFL-CIO,
a labor organization as defined in the Labor Management
Relations Act of 1947, as amended (29 U.S.C. § 141, et seq.),
or any successor union.

1.2  ASSOCIATION means the Solano Mechanical Contractors Associa-
tion.

1.3  COLLECTIVE BARGAINING AGREEMENT means any agreement entered
into by the Union with any employer as defined in the Labor
Management Relations Act of 1947, as amended (29 U.S.C. § 141,
et seq.), covering wages, rates of pay, hours of labor, or
other conditions of employment, of employees represented for
the purposes of collective bargaining by the Union, and which
agreement provides for payment by the employer into this Fund.

1.4  INDIVIDUAL EMPLOYER means any person or entity, who or which
is now, or hereafter may be, required to make payments into
this Trust Fund, pursuant to a Collective Bargaining Agree-
ment.

1.5  EMPLOYEE means any employee of an Individual Employer whose
work or work classification is covered by a Collective Bar-
gaining Agreement with the Union.

1.6  BOARD OF TRUSTEES or BOARD means the Board of Trustees of the
U. A. Local No. 355 Labor-Management Cooperation Committee
Trust Fund.

1.7  FUND means the Trust Fund created and governed by this
Agreement.

## ARTICLE II - GENERAL PROVISIONS

2.1  Establishment of the Fund
There is hereby created the U. A. Local No. 355 Labor-Manage-
ment Cooperation Committee Trust Fund (hereinafter the Fund).  The
Fund shall consist of all payments required by the Collective
Bargaining Agreements, all grants from appropriate public agencies,
all other money lawfully received, and all interest, income and
return thereon.

2.2  Purposes of the Fund
Assets of the Fund shall be used for the following purposes:
(a)  To improve communication between representatives of labor and
management;

**U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND TRUST AGREEMENT**

1                          April, 1989

(b)  To provide workers and employers with opportunities to study and explore new and innovative approaches to achieving organizational effectiveness;

(c)  To assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(d)  To study and explore ways and means of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the area industry;

(e)  To enhance the involvement of workers in making decisions that affect their working lives;

(f)  To expand and improve working relationships between workers and managers; and

(g)  To encourage free collective bargaining by establishing continuing mechanisms for communication between employers and their employees through federal assistance to the formulation and operation of a Labor-Management Committee.

## 2.3  Title to the Fund

All legal rights to the Fund shall belong to the Board of Trustees of the Fund. Neither the Association, its members, the individual employers, the Union, the individual employees nor any other beneficiary shall have any right, title or interest in the Fund other than as specifically provided in this Agreement. Neither the Fund nor any contributions to the Fund shall be in any manner liable for or subject to the debts, contracts or liabilities of the Associations, any Individual Employer, the Union or any individual Employee. No part of the Fund, or any benefits payable in accordance with this agreement, shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person, except as hereinafter provided.

## 2.4  Rights of the Parties

Except in respect to making contributions to the Fund as provided in the Collective Bargaining Agreement, the rights and duties of all parties, including the Employers, the Individual Employer, the Union, the individual Employees and the Trustees, shall be governed by the provisions of this Agreement and contracts procured or executed pursuant to this Agreement.

## 2.5  Obligations of the Parties

Neither the Employers, nor any officer, agent, employee or committee member of the Employers, shall be liable to make contributions into the Fund or be under any other liability to the Fund, except as required by Collective Bargaining Agreements with the Union or other agreements with the Fund. In no event shall any Individual Employer be liable or responsible for any contributions due from other Individual Employers.

## 2.6  Non-Liability of the Parties

Neither the Association, the Individual Employers, the Union nor any individual Employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

## 2.7  Form and Manner of Contributions

Payments into the Fund shall be due and payable at the principal office of the Fund in such installments and at such times as the Board of Trustees shall from time to time direct.    Each payment or installment shall be accompanied by a report in such a form as the Board may from time to time direct.

## 2.8  Liability for Late Contributions

Insofar as payment of contributions by the Individual Employers and Union into this Fund are concerned, time is of the essence. The parties nevertheless recognize and acknowledge that it would be extremely difficult, if not impossible, to fix the actual expense and damage to this Fund and to covered Employees which would result from the failure of an Individual Employer to make a monthly payment of contributions promptly and in full within the time provided.    It is therefore agreed that if an Individual Employer fails to pay his contributions to the Fund in full on or before the due date fixed by the Board, there shall be added by way of liquidated damages, and not as a penalty, ten percent (10%) of the contributions due.    If that Employer then fails to pay all liabilities due, including the liquidated damages, before the first of the next month, there shall be added additional liquidated damages of ten percent (10%).    In addition, all late contributions and all liquidated damages shall bear interest at the rate of twelve percent (12%) per annum until paid.

In addition to the contributions due and the liquidated damages provided for in this Section, there shall be added all reasonable costs incurred by the Fund in the collection of the delinquent payments, including but not limited to reasonable attorney's fees, accounting costs, and costs of legal actions.

It shall not be a violation of any Collective Bargaining Agreement for the Union to refuse to man any job or to withdraw Employees from the job or jobs of any delinquent Individual Employer.

## 2.9  Notice Requirements

Any notice required to be given under the terms of this Agreement shall be deemed to have been duly served, if delivered personally to the person to be notified in writing, at his last known address as shown in the records of the Fund or if sent by wire to such person at said last known address.

2.10 <u>Governing Law</u>
     The interpretation of this Agreement shall be governed by the laws of the United States, and this Agreement and the Plan shall be construed to be in accordance with those laws if at all possible.    In the event that any section of this Agreement becomes illegal or invalid, such illegality or invalidity shall not affect the remaining provisions of this Agreement unless such illegality or invalidity prevents the Board of Trustees from accomplishing the purposes of the Trust.  In that case, the parties to this Agreement shall take whatever steps are necessary to preserve this Trust Fund, including, but not limited to, amending this Agreement to eliminate the illegality or invalidity.

2.11 <u>Principal Office</u>
     The Fund shall have its principal office at a place to be designated by the Board of Trustees.

### ARTICLE III - BOARD OF TRUSTEES

3.1  <u>Membership of the Board of Trustees</u>
     The Fund shall be administered by a Board of Trustees, which shall consist of four (4) Trustees representing the Individual Employers (hereinafter called Employer Trustees) and four (4) Trustees representing the Employees (hereinafter called Employee Trustees).  The four Employer Trustees shall be appointed by the Association.  The four Employee Trustees shall be appointed by the Union.

     The following named persons shall serve as initial Trustees, and shall continue as Trustees until successor Trustees are appointed as hereinafter provided:

2(TWO) TO BE NAMED                    2(TWO) TO BE NAMED
<u>EMPLOYER TRUSTEES</u>                <u>EMPLOYEE TRUSTEES</u>
Gary L Andrews                        Rodney L. Cameron
Frank O. Andrews Sr.                  Michael E. Beaudes

3.2  <u>Acceptance of the Office of Trustee</u>
     All initial Trustees and any and all successor Trustees shall sign this Trust Agreement, or any counterpart thereof.  Such signature, upon delivery to the Board, shall constitute their acceptance of the office and their agreement to act under and to be subject to all of the terms and conditions of this Trust Agreement and any amendment or amendments thereof.


### U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
#### COMMITTEE TRUST FUND TRUST AGREEMENT
4
                                        April, 1989

### 3.3  Certification of Appointment
The appointment of each Employer Trustee shall be signed by the appointing Association's President and delivered to the Board. The appointment of each Employee Trustee shall be signed by the Business Manager of the Union, and delivered to the Board.

### 3.4  Officers of the Board
The Board shall select one of their number to act as Chairman of the Board and one to act as Co-Chairman, to serve for such period as the Board shall determine. When the Chairman is selected from among the Employer Trustees, the Co-Chairman shall be selected from among the Employee Trustees, and vice-versa. The Board shall also appoint a Secretary, who shall keep minutes or records of all meetings, proceedings, and acts of the Board. Such minutes need not be verbatim.

### 3.5  Term of Office
Each Trustee shall serve for such term of office as provided in the By-laws or other governing instrument of their respective organizations.

### 3.6  Resignation
A Trustee may resign, at any time, by serving written notice of such resignation upon the Chairman or Co-Chairman of the Board. Such notice is to be served at least thirty (30) days prior to the date on which such resignation is to be effective, unless the resigning Trustee has good cause for a shorter period of time.

### 3.7  Removal
A Trustee may be removed from office at any time, for any reason, in the manner in which he was appointed.

### 3.8  Appointment of New Trustees
If any Trustee dies, resigns, or is removed from office, a successor Trustee shall be appointed by the same organization that appointed the original Trustee in the same manner as provided in Section 3.1. In the event that the proper organization does not appoint a successor Trustee within thirty (30) days, the other Trustees from the same group as the original Trustee, Employer or Employee, shall appoint a temporary Trustee who is a member of the same organization as the former Trustee. This appointment shall last only until the organization which appointed the former Trustee appoints a successor.

## ARTICLE IV - FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES

**4.1  Governance of the Trust by the Board of Trustees**
     The Board of Trustees shall have the power and duty to administer the Fund for the purposes expressed in Section 2.1. In pursuit of that goal, the Board shall take whatever steps it reasonably deems appropriate to establish labor-management cooperation committees, to conduct educational programs for the general public or for the industry, and to take any other reasonable steps which it deems to be beneficial to the utility piping industry in general and to the unionized sector of that industry in particular.

**4.2  Powers of the Board**
     The Board shall have all general and incidental powers and duties appropriate to the performance of their duties, including without limitation of the foregoing, the following powers and duties:

(a)  To claim, demand, collect, receive, sue for and hold all payments of money due this Fund by Individual Employers and all income and increments thereof, and to deposit all such payments collected or received by the Fund in an account in the name of the Fund in such bank or banks as the Board shall from time to time determine;

(b)  To enter into contracts or to terminate, modify, or renew any contracts, and to exercise and claim all rights and benefits granted to the Board or the Fund by any contracts. Any contract shall be executed in the name of the Fund, or the Board;

(c)  To establish and accumulate such reserve funds as may be adequate to provide for the maintenance in effect of any beneficial programs and projects, and for administration expenses and other obligations of the Fund;

(d)  To employ such executive, consultant, administrative, clerical, secretarial, accountant, and legal personnel and other employees and assistants as may be necessary, in connection with the administration of the Fund or any program or project approved by the Board of Trustees, and to pay or cause to be paid out of the Fund the compensation and necessary expenses of administration;

(e)  To incur and pay out of the Fund any expense reasonably incidental to the administration of the Fund or to any beneficial program or project, including any reasonable expense incurred in the establishment of this Trust Agreement, the Fund or the beneficial programs and projects;

(f)    To compromise, settle or release claims or demands in favor of or against the Fund on such terms and conditions as the Board may deem desirable.    However, no such compromise, settlement, or release of any claim or demand shall in any way compromise, settle, or release any Individual Employer or the Association from any liability incurred by any or all of them by reason of any breach of any Collective Bargaining Agreement, except for liability to this Fund for failure to pay required contributions;

(g)    To invest and reinvest from time to time such portion of the Fund as is not required for current expenditures and charges;

(h)    To adopt rules and regulations from time to time for the administration of any beneficial programs or project;

(i)    To borrow money upon such terms and conditions as the Board of Trustees shall determine, for any purpose which the Board reasonably determines to be useful for the promotion of the purposes of the Fund; and

(j)    To sell, purchase, lease, encumber, or otherwise acquire or dispose of real or personal property upon such terms and conditions as the Board shall determine.

4.3    Power to Delegate
        In carrying out the duties imposed upon them by this Article, the Board of Trustees may:

(a)    employ qualified professional consultants to advise them with respect to their responsibilities under this Trust Agreement and the Plan;

(b)    upon the advice of such consultants, allocate specific duties, responsibilities, or obligations to members of the Board or to persons other than named fiduciaries; and

(c)    appoint a co-trustee or an investment manager to manage any assets of the Fund.

4.4    Fidelity Bonds
        The Board shall provide for fidelity bonds in amounts equal to ten (10%) per cent of the Funds handled, but in no event less than $1,000.00 nor more than $500,000.00, for Trustees or other persons who shall be authorized to receive or withdraw money from or for the Fund.    The cost of such bonds shall be a proper charge against the Fund.

4.5    Authority to Spend the Fund

U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND TRUST AGREEMENT
7                                                      April, 1989

Checks, drafts, vouchers, or other withdrawals of money from the Fund may be signed only by a person or persons authorized by the Board to sign or countersign.

## 4.6  Maintenance of Records

The Board shall maintain suitable and adequate records of and for the administration of the Fund and of any beneficial programs and projects.  The Board may require the Association, the Individual Employers, the Union, or any participant in any beneficial programs and projects, to submit to it any information, data, report, or document reasonably relevant to and suitable for the purposes of such administration, except that the Union cannot be required to submit a membership list.  Upon notice in writing from the Board, an Individual Employer must permit a Certified Public Accountant, representing the Board, to enter upon the premises of such Employer at reasonable time or times during regular business hours, for the purpose of examining and copying any books, records, documents or reports of such Individual Employer, for the purpose of determining that full, prompt and regular payment of all sums required to be paid by him or it to the Fund have been paid.

## 4.7  Auditing of the Fund

The books of account and records of the Board, including the books of accounts and records pertaining to the Fund, shall be audited at least once each year by a Certified Public Accountant selected by the Board.  The Board shall also make all other reports required by law.  A statement of the results of the annual audit shall be available for inspection by persons with a legal interest in the Fund at the principal offices of the Trust and at each other suitable place as the Board may designate from time to time. Copies of such statements shall be delivered to the Association, the Union and each Trustee.

### ARTICLE V - GENERAL PROVISIONS APPLICABLE TO TRUSTEES

## 5.1  Reliance on the Trust

No person or entity that has verified that he or it is dealing with a duly appointed and authorized Trustee, or any authorized delegate, shall be obligated to see to the application of any money or property of the Fund, or that the terms of this Agreement have been complied with, or to inquire as to the necessity or expediency of any act of the Board.  Every instrument executed by the Board or at its direction shall be conclusive in favor of every person who relies on it, that:

(a)  at the time of the delivery of the instrument, this Trust Agreement was in full force and effect;

U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND TRUST AGREEMENT
8                          April, 1989

(b)   the instrument was executed in accordance with the terms and conditions of this Agreement; and

(c)   the Board was duly authorized to execute the instrument or direct its execution.

5.2   Standard of Care of the Trustees
      The duties, liabilities and responsibilities of the Trustees shall be as provided in this Trust Agreement. The Trustees in the performance of their duties shall use the same care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims.

5.3   Limitation of the Trustees' Liability
      Nothing in this Agreement shall be construed to enlarge the liabilities of the Trustees beyond what is required of them under the provisions of the Employees Retirement Income Security Act of 1974, as amended.  The Fund shall exonerate, reimburse, and save harmless the Trustees individually and collectively against any and all liabilities and reasonable expenses arising out of their performance of their duties as Trustees, except the liabilities and expenses of any individual Trustee which arose out of the failure to perform the duties of Trustee as defined in the Act.

5.4   Limitation of the Parties' Liability for Acts of the Trust
      Neither the Association, the Individual Employers, the Union, nor any of the Trustees shall be responsible or liable for any of the following:

(a)   the validity of this Trust Agreement or of any program or project which the Trustees have deemed to beneficial to the utility piping industry;

(b)   the form, validity, sufficiency, or effect of any contract which may be entered into;

(c)   any delay occasioned by any restriction or provision in this Trust Agreement, in the programs and projects of the Fund, in the rules and regulations of the Board issued hereunder, in any contract procured in the course of the administration of the programs or projects, or in any policy or proper procedure in such administration; provided, however, that this clause shall not excuse any violation of any Collective Bargaining Agreement; or

(d)   the making or retention of any deposit or investment of the Fund, the disposition of any such investment, the failure to make any investment of the Fund, or any loss or diminution of the Fund, except as to the particular person involved to the

U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION
COMMITTEE TRUST FUND TRUST AGREEMENT
9                                         April, 1989

extent that such loss was due to a breach of fiduciary responsibility of such person.

### 5.5 Non-Liability of the Parties for Acts of Their Appointees
Neither the Association, the Individual Employers, nor the Union shall be liable in any respect for any of the obligations or acts of the Board or a Trustee or Trustees because any Trustee is in any way associated with that Association, Individual Employer, or Union.

### 5.6 Reimbursement of the Trustees
Each Trustee shall be reimbursed out of the Fund for all expenses properly and actually incurred in the performance of his duties for the Trust.  In addition thereto, any Trustee who is not already receiving full-time pay from an Association, an Individual Employer, or the Union, shall receive reasonable compensation for time actually spent in the performance of his duties for the Trust, not in excess of eight (8) hours in any one day, at the current straight time rate for journeymen in effect at the time; provided however, that verified vouchers showing the time so spent must be submitted and approved before payment is made.

### 5.7 Return of Trust Property
Any Trustee who resigns or is removed from office shall forthwith turn over to the Chairman or Co-Chairman of the Board any and all records, books, documents, money and other property in his possession or under his control which belong to the Board or the Fund or which were received by him in his capacity as such Trustee.

### 5.8 Insuring of the Trustees
The Trust Fund and the Board of Trustees, as such, are expressly empowered to purchase insurance to cover liability or losses occurring by reason of the act or omission of any Trustee or other fiduciary; provided, however that such insurance must permit recourse by the insurer against the Trustee or other fiduciary whose breach of a fiduciary obligation results in such loss or liability. Nothing herein shall be construed, however, to prohibit any Trustee or other fiduciary from purchasing insurance, or waiver of recourse, to cover liability for his or her account; or the Union or an Association, from purchasing insurance or waiver of recourse to cover liability of any person who serves in a fiduciary capacity pursuant to appointment by them.


## ARTICLE V - PROCEDURE OF THE BOARD OF TRUSTEES

### 6.1 Acting Only as a Board
The Board of Trustees may take actions affecting the Trust only as a Board.  All actions must be taken at a regular meeting, at a special meeting, or in writing without a meeting, provided

that such written action has the affirmative concurrence in writing of all Trustees.

## 6.2   Regular Meetings of the Board

Ordinary business of the Trust shall be conducted at regular meetings, in accordance with a schedule established by the Board. Regular meetings of the Board shall be held at the principal office of the Board and Fund unless another place is designated from time to time by the Board.

## 6.3   Special Meetings of the Board

Either the Chairman or the Co-Chairman or any four (4) members of the Board of Trustees may call a special meeting of the Board of Trustees by giving written notice to all other Trustees of the time and place of such meetings at least five (5) days before the date set for the meeting.  Any such notice of special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustees at the address last shown in the records of the Board.

## 6.4   Quorum and Voting Procedures

No business may be conducted at any regular or special meeting of the Board unless there is a quorum of at least four (4) Trustees, including at least two Employee Trustees and two Employer Trustees.  When a matter comes to a vote, only the Chairman and Co-Chairman shall vote, or a substitute chosen for that meeting by the members of the group of which the absent officer is a member.  The Chairman and Co-Chairman shall each vote as instructed by a majority of the group of Trustees which he represents.  If a group is unable to reach a majority, the officer representing that group shall decide how to vote.  If the Board is deadlocked on a decision, it shall arbitrate the decision, according to Article VII.

## ARTICLE VII - ARBITRATION

### 7.1   Board Actions in the Event of a Deadlock

In the event that the Board deadlocks on any matter subject to determination by the Board, the Board shall, within ten (10) calendar days thereafter, agree upon an impartial umpire to decide the dispute and submit a written, joint statement to the umpire on which he or she shall evaluate the facts of the dispute.

(a)   By agreement of the Board of Trustees, the dispute may be submitted to a Board of Arbitration consisting of the umpire and an equal number of representatives from both Trustee groups.  The decision of a majority of this Board of Arbitration shall be final and binding upon each Trustee, the Board, the Union, the Association, and Individual Employers and other

parties to this Agreement or to any apprenticeship and training program.

(b)    In the absence of such mutual agreement, the dispute shall be submitted to the impartial umpire alone. The decision of the impartial umpire shall be final and binding upon each Trustee, the Board, the Union, the Association, Individual Employers and all other parties to this Agreement and or to any apprenticeship and training program.

(c)    To facilitate the resolution of deadlocks, the Board may appoint a permanent umpire and establish a special procedure for all deadlocks, except, however, either group of Trustees may, by a majority vote, require the abandonment of the permanent umpire and special procedure in any particular case.

## 7.2    Power to Provide Separate Statements

If the Board of Trustees cannot agree upon a joint statement presenting said matter to the umpire, each group of Trustees shall prepare and state in writing their version of the dispute and the question or questions involved, within ten (10) calendar days after said disagreement.

## 7.3    Authority of the Umpire

In making his or her decision, the impartial umpire shall be bound by the provisions of this Trust Agreement and of the applicable Collective Bargaining Agreements, and shall have no authority to alter or amend the terms of those agreements.

## 7.4    Power to Petition the Court

If no agreement on the designation of an impartial umpire is reached within five (5) calendar days, or the dispute is not resolved in the manner and within the time provided or within such further time as the Board of Trustees may allow for either such purpose, either group of Trustees may petition the United States District Court for the Northern District of California to appoint an impartial umpire to resolve the dispute.

## 7.5    Limitation on Arbitrability

No matter which is subject to arbitration under this Article, including the administration of the Trust or of the Fund or of any apprenticeship or training program, shall be subject to the grievance procedure or any other arbitration procedure provided in any Collective Bargaining Agreement. No other matter subject to or specifically excluded from the grievance procedure of any Collective Bargaining Agreement shall be subject to arbitration under this Article.

**ARTICLE VIII - EFFECTIVE DATE, AMENDMENT AND TERMINATION**

8.1  <u>Effective Date</u>
    This Trust Agreement shall be effective immediately upon the execution of this agreement by the Union and the Association.  The execution, amendment, or termination of this Trust shall not affect the obligation of Individual Employers to make contributions in accordance with applicable Collective Bargaining Agreements.

8.2  <u>Power to Amend</u>
    The provisions of this Trust Agreement may be amended or modified at any time by mutual agreement of the Association and the Union, subject to the applicable terms and conditions of any Collective Bargaining Agreement and any applicable law or regulation.

8.3  <u>Substitution of Parties</u>
    This Agreement shall be binding on all Individual Employers who are now, or hereafter may become, a party to, or bound by, any Collective Bargaining Agreement requiring payment into this Fund, and their heirs, executors, administrators, successors, purchasers, and assigns; and on the employees, the participants in any program or project, the Association, and the Union.  If a party to this Agreement ceases to exist or otherwise withdraws from participation in this Trust, and the remaining party or parties find that substitution of a new party is essential or beneficial to the Trust, that party may permit such other parties to participate in an appropriate capacity.  The parties may permit a new Union or new Association to join this Agreement at any time, and amend the number of Trustees and manner of voting as necessary to accommodate the new organization.  New parties shall be bound to the terms of this Agreement as if they were original signatories.

8.4  <u>Termination of the Trust Fund and Distribution of Assets</u>
    In the event that the obligation of all Individual Employers to make contributions shall terminate, or upon any liquidation of the Fund, the Board of Trustees shall take the necessary steps to wind up the Trust Fund, and this Trust Agreement shall terminate. Upon the written request of the Union and the approval of a majority of the Board, and after sufficient funds to pay all obligations of the Trust have been set aside or other arrangements made for that purpose, the Board shall turn over any surplus money and property in the Fund to any Labor-Management Cooperation Committee or other appropriate Trust Fund that may be created by the Union, or the Employees whom it represents, and Employers.  If no such request is forthcoming, the Board shall apply the remainder of the Fund to the purposes specified in Section 2.1 of this Agreement.

The parties intend that this Trust shall last in perpetuity. However, in no event shall this Trust continue for a period longer than is permitted by law.

IN WITNESS of the execution of this Agreement establishing the U. A. Local No. 355 Labor-Management Cooperation Committee Trust Fund on the ___24___ day of ___April___, 1989, we hereby affix our signatures, as representatives of the designated parties.

LOCAL UNION NO. 355,
UNITED ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF THE PLUMBING
AND PIPEFITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO


_____


_____


SOLANO MECHANICAL
CONTRACTORS ASSOCIATION


_____


_____

IN ACCEPTANCE of the position of Trustee of the U. A. Local No. 355 Labor-Management Cooperation Committee Trust Fund, as established by this Agreement, we hereby affix our signatures.

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

_Gary L. Adams_                      _Sidney R. Cameron_

_Frank J. Andrews Sr._              _Nichael Bush_

* Two to be Named                    * (Two) To Be Named

_____                 _____

**U. A. LOCAL NO. 355 LABOR-MANAGEMENT COOPERATION**
**COMMITTEE TRUST FUND TRUST AGREEMENT**
16                                   April, 1989

## U. A. LOCAL NO. 355
## LABOR-MANAGEMENT COOPERATION COMMITTEE TRUST FUND
### TRUST AGREEMENT

WHEREAS U. A. LOCAL NO. 355 (hereinafter the Union) and the SOLANO MECHANICAL CONTRACTORS ASSOCIATION (hereinafter the Association) have entered into a Collective Bargaining Agreement, and from time to time will continue to enter into Collective Bargaining Agreements and amendments thereto, and

WHEREAS those Collective Bargaining Agreements do, and will, provide for employer contributions to a Labor-Management Cooperation Committee Trust Fund, established pursuant to the provisions of Section 302(c)(9) of the Labor Management Relations Act of 1947, as amended (29 U.S.C. Section 186(c)(9)), for the purposes and objectives provided in the Labor-Management Cooperation Act of 1978 (29 U.S.C. Section 175a),

IT IS HEREBY AGREED THAT parties signatory hereto establish the U. A. Local No. 355 Labor-Management Cooperation Committee Trust Fund, to accomplish the purposes expressed herein.

APRIL, 1989

July 1, 2003

# U.A. LOCAL 355

# LANDSCAPE AGREEMENT

## FOR
## NORTHERN
## CALIFORNIA &
## NORTHERN NEVADA

Exhibit  F

advance to the next period of training in less than six (6) months.
The apprentice may advance a maximum of six (6) months during the
apprenticeship provided the apprentice has the written approval of the
Employer and the Apprenticeship Committee.

### ARTICLE IV
### WORK COVERED

18.   The Landscape industry is defined as follows: Decorative
landscaping, such as decoration walls, pools, ponds, fountains,
reflection units, low voltage lighting displays, hand grade landscape
areas, tractor grade landscape areas, finish rake landscape areas,
spread top soil, build mounds, transfer irrigation manual or power,
layout for irrigation backfill trenches, asphalt, plant shrubs, trees,
vines, set boulders, seed lawns, lay sod, use ground covers such as
flatted plant materials, rock rip rap, colored rocks, crushed rock, pea
gravel, and any other landscapeable ground covers, installation of
header boards and cement mowing edges, soil preparation such as wood
shavings, fertilizers(organic, chemical or synthetic), top dress ground
cover areas with bark of any woods residual or other specified tip
dressing, watering of plants and all clearing and clean up prior to and
after landscaping.

  A.   In addition to the above Paragraph, the work covered shall
  include but not be limited to all work involved in the
  distribution, laying, and installation of landscaping irrigation
  pipe, the installation of low voltage automatic irrigation and
  lawn sprinkler systems, including but not limited to the
  installation of automatic controllers, valves, sensors, master
  control panels, display boards, junction boxes and conductors
  including all components thereof.

  B.   Installation of valve boxes, thrust blocks, both precast and
  poured in place, pipe hangers and supports, incidental to the
  installation of the entire piping system.

  C.   Start-up testing, flushing, purging, water balancing, placing
  into operation all piping equipment, fixtures and appurtenances
  installed under this Agreement.

  D.   Any line inside a structure which provides water to work
  covered by this Agreement, including piping for ornamental pools
  and fountains when done in conjunction with landscaping.

  E.   All piping for ornamental stream beds, and waterways.

  F.   All swimming pools in connection with single family
  residential units, condominiums, town house, apartment houses,
  including remodels, additions, all service and repair, mobile home
  parks, and motels and hotels up to four stories in height may be
  performed under the terms and conditions and wage and fringe rates
  of this Agreement.  All other swimming pool piping shall be done
  by Building Trades Journeyman and Apprentices only, who may be
  dispatched out of UA Local 355, at no less than the wage and
  fringe rate of the UA Local Union Master Labor Agreement having
  jurisdiction in the geographical area where the work is being
  performed.  The Hiring Hall provisions contained in the Local
  Union's Master Labor Agreement where the work is being performed
  shall not apply.

  G.   All temporary irrigation and lawn sprinkler systems and all
  types of hydro mulching and erosion control.

  H.   This Agreement may be used to cover maintenance and plant

establishment.  Plant establishment as such work is described in the employers contract documents shall be work covered by this agreement. This work may be performed exclusively by Landscape/Irrigation tradesman without the supervision of a journeyman.

I.    Trenchers are covered by this Agreement provided the Trencher is of 35 horsepower or less.

J.    The installation of playground equipment.

19.  None of the work covered by this Agreement, which is to be performed at the site of construction, alteration, painting or repair of any building, structure or other work, shall be subcontracted by any Individual Employer except to a subcontractor who agrees to be bound by and comply with the terms and conditions of this Agreement including contribution of fringe benefits; however, if the Individual Employer has no employees covered by this Agreement at the job site, the subcontractor shall be bound to all terms and conditions of this Agreement, including fringe benefits, except Article V, Employment Procedure.

A.    A subcontractor is defined as any person, firm or corporation who agrees under contract with the employer, or a subcontractor of the employer, or any Individual Employer to perform on the jobsite any part or portion of the construction work covered by the prime contractor, including the operation of equipment, performance of labor and installation of materials.

## ARTICLE V
## EMPLOYMENT PROCEDURE

20.  There shall be established a Landscape Industry Hiring Hall, and a hiring list entitled "Landscape Work."

21.  In the hiring of employees to perform the work covered by this Agreement, preference shall be given in the following order:

A.    First, to individuals registered on the "Landscape Work" list, in the order in which they registered for employment. Individuals shall be eligible to register on the Landscape Work list if they can show that they have been employed on landscape work within the area covered by this Agreement for a period of not less that six months during the two-year period immediately preceding the date of their registration for employment.

B.    Second, to individuals registered with the Hiring Hall of the signatory Local Union which has jurisdiction over the jobsite where the work is to be performed, in the order in which they registered for employment.

C.    Prior to dispatch of any employee or applicant for employment, the Union shall verify that person's employment eligibility under the Immigration Reform and Control Act of 1986.The Union shall complete a U.S. Immigration and Naturalization Service Form I-9 for each employee and applicant for employment who is dispatched. However, if the Union is unable to complete verification at the time of dispatch, the employee or applicant will still be eligible for dispatch and the Union shall verify that individual's employment eligibility within three days of dispatch, or 21 days if the employee or applicant has provided a receipt showing application for a document which will establish eligibility.  The Union shall keep a copy of each Form I-9 in its files for three years, or until one year after the employee's last

## ARTICLE XVII
### EFFECTIVE AND TERMINATION DATES

125. Except as otherwise provided herein, this Agreement shall be effective July 1, 2003, and remain in effect until June 30, 2005, and shall be renewed from year to year thereafter unless either of the parties hereto shall give written notice to the other of a desire to change at least sixty (60), but not more than ninety(90)days prior to the date of the expiration of this Agreement. While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional benefits except at the time and in the manner provided in this Agreement.

## ARTICLE XVIII
### OTHER CONDITIONS AND AGREEMENTS

126. If subsequent to the date of execution of this Agreement, the employer becomes signatory to any other agreement covering the same work, the terms of such an agreement will not replace any of the terms of this Agreement unless agreed to by the employer and the Union. The parties agree that the Employer may take advantage of any of the more favorable terms of any other agreements that the Union might enter into with other employers for the same work, except however, that Special Project Agreements adopted under Paragraph 8 shall be subject only to the special rules contained therein, and this clause shall not apply to the Residential Light Commercial Maintenance Agreement.

127. The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with this recognition, the parties will continually monitor the effectiveness of this Agreement relative to the specific agreement, to initiate such modifications to the Agreement during its terms as may be necessary to assure the work opportunities of the employees and the competitive position of the employer. The Union recognizes that other crafts are cooperating with the employer in meeting open shop competition. In order to cooperate with this effort, the Union agrees that if any of the other crafts have made available a reduced wage and fringe package of particular work, the employer may request reduction of the wage and fringe package of employees covered by this Agreement in the same proportion for the same work, and the reduction may be made upon mutual agreement of the parties to this Agreement.

128. Subject to all State and Federal Rules and Regulations governing or applicable to the safety of employees, place of employment and operation of equipment, no rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tool, or other labor saving devices. Employees shall perform their duties in such fashion as to promote efficient operation of the particular duty and of any job as a whole.

## ARTICLE XIX
### FRINGE BENEFIT CONTRIBUTIONS FOR TRAVELERS

129. A.   Notwithstanding any other provision of this Agreement, an employer is required to make fringe benefit contributions at the rates, and in the manner, described below, instead of any other amount provided herein, if the following conditions are met:

      (1)   The employee's home local union is a UA local union other than UA Local 355; and

July 1, 2004

# U.A. LOCAL 355

## LANDSCAPE AGREEMENT

### FOR NORTHERN CALIFORNIA & NORTHERN NEVADA


Exhibit G

17.   The second classification is "Apprentice."   Upon completion of
five years on the job and related classroom training and with the
approval of the Apprenticeship Committee, the apprentice shall advance
to landscape journeyman status.   The length of apprenticeship training
shall be a period of five years.   Each year shall be equal to one (1)
twelve (12) month period of training. Each apprentice shall serve a
minimum of nine hundred (900)hours of on the job training before
advancing to the next period of training.   The apprentice shall not
advance to the next period of training in less than six (6) months.
The apprentice may advance a maximum of six (6) months during the
apprenticeship provided the apprentice has the written approval of the
Employer and the Apprenticeship Committee.

## ARTICLE IV
## WORK COVERED

18.   The Landscape industry is defined as follows: Decorative
landscaping, such as decoration walls, pools, ponds, fountains,
reflection units, low voltage lighting displays, hand grade landscape
areas, tractor grade landscape areas, finish rake landscape areas,
spread top soil, build mounds, transfer irrigation manual or power,
layout for irrigation backfill trenches, asphalt, plant shrubs, trees,
vines, set boulders, seed lawns, lay sod, use ground covers such as
flatted plant materials, rock rip rap, colored rocks, crushed rock, pea
gravel, and any other landscapeable ground covers, installation of
header boards and cement mowing edges, soil preparation such as wood
shavings, fertilizers(organic, chemical or synthetic), top dress ground
cover areas with bark of any woods residual or other specified top
dressing, watering of plants and all clearing and clean up prior to and
after landscaping.

   A.   In addition to the above Paragraph, the work covered shall
   include but not be limited to all work involved in the
   distribution, laying, and installation of landscaping irrigation
   pipe, the installation of low voltage automatic irrigation and
   lawn sprinkler systems, including but not limited to the
   installation of automatic controllers, valves, sensors, master
   control panels, display boards, junction boxes and conductors
   including all components thereof.

   B.   Installation of valve boxes, thrust blocks, both precast and
   poured in place, pipe hangers and supports, incidental to the
   installation of the entire piping system.

   C.   Start-up testing, flushing, purging, water balancing, placing
   into operation all piping equipment, fixtures and appurtenances
   installed under this Agreement.

   D.   Any line inside a structure which provides water to work
   covered by this Agreement, including piping for ornamental pools
   and fountains when done in conjunction with landscaping.

   E.   All piping for ornamental stream beds, and waterways.

   F.   All swimming pools in connection with single family
   residential units, condominiums, town house, apartment houses,
   including remodels, additions, all service and repair, mobile home
   parks, and motels and hotels up to four stories in height may be
   performed under the terms and conditions and wage and fringe rates
   of this Agreement.   All other swimming pool piping shall be done
   by Building Trades Journeyman and Apprentices only, who may be
   dispatched out of UA Local 355, at no less than the wage and
   fringe rate of the UA Local Union Master Labor Agreement having

jurisdiction in the geographical area where the work is being performed. The Hiring Hall provisions contained in the Local Union's Master Labor Agreement where the work is being performed shall not apply.

G.   All temporary irrigation and lawn sprinkler systems and all types of hydro mulching and erosion control.

H.   This Agreement may be used to cover maintenance and plant establishment. Plant establishment as such work is described in the employers contract documents shall be work covered by this agreement. This work may be performed exclusively by Landscape/Irrigation tradesman without the supervision of a journeyman.

I.   Trenchers are covered by this Agreement provided the Trencher is of 35 horsepower or less.

J.   The installation of playground equipment.

19.  None of the work covered by this Agreement, which is to be performed at the site of construction, alteration, painting or repair of any building, structure or other work, shall be subcontracted by any Individual Employer except to a subcontractor who agrees to be bound by and comply with the terms and conditions of this Agreement including contribution of fringe benefits; however, if the Individual Employer has no employees covered by this Agreement at the job site, the subcontractor shall be bound to all terms and conditions of this Agreement, including fringe benefits, except Article V, Employment Procedure.

A.   A subcontractor is defined as any person, firm or corporation who agrees under contract with the employer, or a subcontractor of the employer, or any Individual Employer to perform on the jobsite any part or portion of the construction work covered by the prime contractor, including the operation of equipment, performance of labor and installation of materials.

## ARTICLE V
## EMPLOYMENT PROCEDURE

20.  There shall be established a Landscape Industry Hiring Hall, and a hiring list entitled "Landscape Work."

21.  In the hiring of employees to perform the work covered by this Agreement, preference shall be given in the following order:

A.   First, to individuals registered on the "Landscape Work" list, in the order in which they registered for employment. Individuals shall be eligible to register on the Landscape Work list if they can show that they have been employed on landscape work within the area covered by this Agreement for a period of not less that six months during the two-year period immediately preceding the date of their registration for employment.

B.   Second, to individuals registered with the Hiring Hall of the signatory Local Union which has jurisdiction over the jobsite where the work is to be performed, in the order in which they registered for employment.

C.   Prior to dispatch of any employee or applicant for employment, the Union shall verify that person's employment eligibility under the Immigration Reform and Control Act of 1986.The Union shall complete a U.S. Immigration and

illegal or void, the remainder of the Agreement shall remain in force and effect, unless the parties so found to be void is wholly inseparable from the remaining portion of this Agreement. The parties agree that in the event any provision of this Agreement is held or determined to be illegal or void, they will promptly enter into lawful negotiations concerning the subject matter of said provision.

## ARTICLE XVII
## EFFECTIVE AND TERMINATION DATES

125. Except as otherwise provided herein, this Agreement shall be effective July 1, 2003, and remain in effect until June 30, 2005, and shall be renewed from year to year thereafter unless either of the parties hereto shall give written notice to the other of a desire to change at least sixty (60), but not more than ninety(90)days prior to the date of the expiration of this Agreement. While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional benefits except at the time and in the manner provided in this Agreement.

## ARTICLE XVIII
## OTHER CONDITIONS AND AGREEMENTS

126. If subsequent to the date of execution of this Agreement, the employer becomes signatory to any other agreement covering the same work, the terms of such an agreement will not replace any of the terms of this Agreement unless agreed to by the employer and the Union. The parties agree that the Employer may take advantage of any of the more favorable terms of any other agreements that the Union might enter into with other employers for the same work, except however, that Special Project Agreements adopted under Paragraph 8 shall be subject only to the special rules contained therein, and this clause shall not apply to the Residential Light Commercial Maintenance Agreement.

127. The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with this recognition, the parties will continually monitor the effectiveness of this Agreement relative to the specific agreement, to initiate such modifications to the Agreement during its terms as may be necessary to assure the work opportunities of the employees and the competitive position of the employer. The Union recognizes that other crafts are cooperating with the employer in meeting open shop competition. In order to cooperate with this effort, the Union agrees that if any of the other crafts have made available a reduced wage and fringe package of particular work, the employer may request reduction of the wage and fringe package of employees covered by this Agreement in the same proportion for the same work, and the reduction may be made upon mutual agreement of the parties to this Agreement.

128. Subject to all State and Federal Rules and Regulations governing or applicable to the safety of employees, place of employment and operation of equipment, no rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tool, or other labor saving devices. Employees shall perform their duties in such fashion as to promote efficient operation of the particular duty and of any job as a whole.

## ARTICLE XIX
## FRINGE BENEFIT CONTRIBUTIONS FOR TRAVELERS

July 1, 2005

# U.A. LOCAL 355

# LANDSCAPE AGREEMENT

## FOR
## NORTHERN
## CALIFORNIA &
## NORTHERN NEVADA

Exhibit __H__

advancing to the next period of training. The apprentice shall not advance to the next period of training in less than six (6) months. The apprentice may advance a maximum of six (6) months during the apprenticeship provided the apprentice has the written approval of the Employer and the Apprenticeship Committee.

## ARTICLE IV
## WORK COVERED

18.   The Landscape industry is defined as follows: Decorative landscaping, such as decoration walls, pools, ponds, fountains, reflection units, low voltage lighting displays, hand grade landscape areas, tractor grade landscape areas, finish rake landscape areas, spread top soil, build mounds, trench for irrigation manual or power, layout for irrigation backfill trenches, asphalt, plant shrubs, trees, vines, set boulders, seed lawns, lay sod, use ground covers such as flatted plant materials, rock rip rap, colored rocks, crushed rock, pea gravel, and any other landscapeable ground covers, installation of header boards and cement mowing edges, soil preparation such as wood shavings, fertilizers(organic, chemical or synthetic), top dress ground cover areas with bark of any woods residual or other specified top dressing, watering of plants and all clearing and clean up prior to and after landscaping.

A.   In addition to the above Paragraph, the work covered shall include but not be limited to all work involved in the distribution, laying, and installation of landscaping irrigation pipe, the installation of low voltage automatic irrigation and lawn sprinkler systems, including but not limited to the installation of automatic controllers, valves, sensors, master control panels, display boards, junction boxes and conductors including all components thereof.

B.   Installation of valve boxes, thrust blocks, both precast and poured in place, pipe hangers and supports, incidental to the installation of the entire piping system.

C.   Start-up testing, flushing, purging, water balancing, placing into operation all piping equipment, fixtures and appurtenances installed under this Agreement.

D.   Any line inside a structure which provides water to work covered by this Agreement, including piping for ornamental pools and fountains when performed in conjunction with landscaping.

E.   All piping for ornamental stream beds, and waterways.

F.   All swimming pools in connection with single family residential units, condominiums, town house, apartment houses, including remodels, additions, all service and repair, mobile home parks, and motels and hotels up to four stories in height may be performed under the terms and conditions and wage and fringe rates of this Agreement. All other swimming pool piping shall be done by Building Trades Journeyman and Apprentices only, who may be dispatched out of UA Local 355, at no less than the wage and fringe rate of the UA Local Union Master Labor Agreement having jurisdiction in the geographical area where the work is being performed. The Hiring Hall provisions contained in the Local Union's Master Labor Agreement where the work is being performed shall not apply.

G.   All temporary irrigation and lawn sprinkler systems and all types of hydro mulching and erosion control.

H.   This Agreement may be used to cover maintenance and plant establishment. Plant establishment as such work is described in the employers contract documents shall be work covered by this agreement. This work may be performed exclusively by all

classifications outlined in this agreement without the supervision of a Journeyman except for Apprentice which would require the supervision of a Journeyman. No ratios.

I.    Trenchers are covered by this Agreement provided the Trencher is of 35 horsepower or less.

J.    The installation of playground equipment and prefabricated park service equipment.

19.  None of the work covered by this Agreement, which is to be performed at the site of construction, alteration, painting or repair of any building, structure or other work, shall be subcontracted by any Individual Employer except to a subcontractor who agrees to be bound by and comply with the terms and conditions of this Agreement including contribution of fringe benefits; however, if the Individual Employer has no employees covered by this Agreement at the job site, the subcontractor shall be bound to all terms and conditions of this Agreement, including fringe benefits, except Article V, Employment Procedure.

A.    A subcontractor is defined as any person, firm or corporation who agrees under contract with the employer, or a subcontractor of the employer, or any Individual Employer to perform on the jobsite any part or portion of the construction work covered by the prime contractor, including the operation of equipment, performance of labor and installation of materials.

## ARTICLE V
## EMPLOYMENT PROCEDURE

20.  There shall be established a Landscape Industry Hiring Hall, and a hiring list entitled "Landscape Work."

21.  In the hiring of employees to perform the work covered by this Agreement, preference shall be given in the following order:

A.    First, to individuals registered on the "Landscape Work" list, in the order in which they registered for employment. Individuals shall be eligible to register on the Landscape Work list if they can show that they have been employed on landscape work within the area covered by this Agreement for a period of not less that six months during the two-year period immediately preceding the date of their registration for employment.

B.    Second, to individuals registered with the Hiring Hall of the signatory Local Union which has jurisdiction over the jobsite where the work is to be performed, in the order in which they registered for employment.

C.    Prior to dispatch of any employee or applicant for employment, the Union shall verify that person's employment eligibility under the Immigration Reform and Control Act of 1986. The Union shall complete a U.S. Immigration and Naturalization Service Form I-9 for each employee and applicant for employment who is dispatched.  However, if the Union is unable to complete verification at the time of dispatch, the employee or applicant will still be eligible for dispatch and the Union shall verify that individual's employment eligibility within three days of dispatch, or 21 days if the employee or applicant has provided a receipt showing application for a document which will establish eligibility.  The Union shall keep a copy of each Form I-9 in its files for three years, or until one year after the employee's last day of employment, if later, and shall complete new I-9 forms as required by I.N.S. regulations.  In making employment eligibility verifications under this Paragraph, the Union will comply strictly with all I.N.S. regulations, but shall have no liability to the Individual Employer in the event verification is faulty.

employer and employee representatives.

116. For the purpose of this Agreement, reference to apprentices shall mean an apprentice receiving training in an approved Landscape Training Program and is receiving progressive wage increases in accordance with the approved program.

117. Effective July 1, 2004; $0.30 of the hourly training contributions for work covered under this Agreement shall be paid in the Northern California / Northern Nevada Landscape and Utility Journeyman and Apprentice Training Trust Fund; and $0.05 of those hourly training contributions shall be paid into the International Training Fund.

118. The Joint Apprenticeship Training Committee established under the Local 355 Northern California/Northern Nevada Journeyman and Apprenticeship Training Trust Fund shall have the responsibility of having the apprenticeship training program approved by the appropriate State or other agency. The Union shall have the responsibility of giving prior notification to the employer in writing of the advancing of an Apprentice.

## ARTICLE XVI
### SAFETY

119. The parties shall cooperate in carrying out safety measures and practices for accident prevention. The employer shall have the right to enforce his Code of safe practices along with its Disciplinary Policy and Procedure.

120. All parties shall comply with all Federal and State Laws, City and County ordinances pertaining to the work covered by this Agreement, including all Federal and State safety and health measures and laws. There shall be no disciplinary action by the Individual Employer against any workman who observes this section in good faith.  If a journeyman is of the opinion that shoring, ladders  or ventilation equipment is inadequate, he shall report same to his foreman and Steward and he will not be disciplined for so doing.

121. Workmen required to work in any area where they are exposed to acids and caustics or any other hazardous conditions, shall be provided protective clothing and equipment by the Individual Employer.

122. Any employee injured on the job to the extent of requiring a doctor's care, and which injury prevents him from working, shall be paid a full day's wages for the date of injuries.

123. Jurisdictional Disputes:  There shall be no cessation of or interference in the work of the employer by reason of a jurisdictional dispute between the Union and such other unions.

124. General Savings Clause: It is not the intent of the parties hereto to violate any clause, rulings, or regulations of any governmental authority or agency having jurisdiction on the subject matter of this Agreement.  The parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void, the remainder of the Agreement shall remain in force and effect, unless the parties so found to be void is wholly inseparable from the  remaining portion  of this Agreement. The parties agree that in the event any provision of this Agreement is held or determined to be illegal or void, they will promptly enter into lawful negotiations concerning the subject matter of said provision.

## ARTICLE XVII
### EFFECTIVE AND TERMINATION DATES

125. Except as otherwise provided herein, this Agreement shall be effective July 1, 2005, and remain in effect until June 30, 2008, and

shall be renewed from year to year thereafter unless either of the parties hereto shall give written notice to the other of a desire to change at least sixty (60), but not more than ninety(90)days prior to the date of the expiration of this Agreement. While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional benefits except at the time and in the manner provided in this Agreement.

## ARTICLE XVIII
### OTHER CONDITIONS AND AGREEMENTS

126. If subsequent to the date of execution of this Agreement, the employer becomes signatory to any other agreement covering the same work, the terms of such an agreement will not replace any of the terms of this Agreement unless agreed to by the employer and the Union. The parties agree that the Employer may take advantage of any of the more favorable terms of any other agreements that the Union might enter into with other employers for the same work, except however, that Special Project Agreements adopted under Paragraph 8 shall be subject only to the special rules contained therein, and this clause shall not apply to the Residential Light Commercial Maintenance Agreement.

127. The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with this recognition, the parties will continually monitor the effectiveness of this Agreement relative to the specific agreement, to initiate such modifications to the Agreement during its terms as may be necessary to assure the work opportunities of the employees and the competitive position of the employer. The Union recognizes that other crafts are cooperating with the employer in meeting open shop competition. In order to cooperate with this effort, the Union agrees that if any of the other crafts have made available a reduced wage and fringe package of particular work, the employer may request reduction of the wage and fringe package of employees covered by this Agreement in the same proportion for the same work, and the reduction may be made upon mutual agreement of the parties to this Agreement.

128. Subject to all State and Federal Rules and Regulations governing or applicable to the safety of employees, place of employment and operation of equipment, no rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tool, or other labor saving devices. Employees shall perform their duties in such fashion as to promote efficient operation of the particular duty and of any job as a whole.

## ARTICLE XIX
### FRINGE BENEFIT CONTRIBUTIONS FOR TRAVELERS

129. A.    Notwithstanding any other provision of this Agreement, an employer is required to make fringe benefit contributions at the rates, and in the manner, described below, instead of any other amount provided herein, if the following conditions are met:

(1)   The employee's home local union is a UA local union other than UA Local 355; and

(2)   The employee requests dispatch at the contribution rate(s) in effect for employees working under the master labor agreement of his or her home local union for one or more of the following plans: defined benefit pension plan(s), defined contribution pension plan, and/or health and welfare, and that contributions for the requested plan be remitted to the trust fund(s) of his home local union; and

(3)   The trust fund(s) of the employee's home local union

Lndscp05                     25

RAPHAEL SHANNON
LORI A. NORD
DIANE SIDD-CHAMPION
PATRICIA A. McCORMICK
ELIZABETH J. MASSON
ANA P. PEREZ

**McCARTHY, JOHNSON & MILLER**
LAW CORPORATION
595 MARKET STREET, SUITE 2200
SAN FRANCISCO 94105-2834
TEL: (415) 882-2992
(916) 443-0726
FAX: (415) 882-2999

P. H. McCARTHY, JR.
(1906-1983)
———
HERBERT S. JOHNSON
(1911-1989)
———
JAMES E. MILLER
(RETIRED 2007)

Page: 1
August 27, 2008
Image Landscape Main
Client Matter Number          lan16H

Summary of Statement for Services Thru 08/27/2008

Summary of Statement for Services Thru 08/27/2008

| | Previous Balance | Fees | Expenses | Payments | Balance |
|---|---|---|---|---|---|
| lan16-002 Fees and Costs | 0.00 | 5,209.50 | 477.80 | 0.00 | $5,687.30 |


Exhibit I

RAPHAEL SHANNON
LORI A. NORD
DIANE SIDD-CHAMPION
PATRICIA A. McCORMICK
ELIZABETH J. MASSON
ANA P. PEREZ

# McCARTHY, JOHNSON & MILLER
### LAW CORPORATION
### 595 MARKET STREET, SUITE 2200
### SAN FRANCISCO 94105-2834
### TEL: (415) 882-2992
### (916) 443-0726
### FAX: (415) 882-2999

P. H. McCARTHY, JR.
(1906-1983)
———
HERBERT S. JOHNSON
(1911-1989)
———
JAMES E. MILLER
(RETIRED 2007)

Page: 1
August 27, 2008
Client Matter Number   lan16-002H
Invoice Number        11007

Image Landscape Main

Fees and Costs

* * *   P R E B I L L   * * *

Summary of Statement for Services Thru 08/27/2008

### Professional Services

| Date | | Description | Hours |
|------|----|-------------|-------|
| 03/16/2007 | LAN | Letter to and letter from Tim Hallenbeck. | 0.20 |
| 03/26/2007 | LAN | Review audit report; telephone call to Dennis Soares; draft letter to Tim Hallenbeck; draft letter to Cathy Gonzalo. | 0.50 |
| 03/27/2007 | LAN | Review and revise letter to Cathy Gonzalo; review and revise letter to Tim Hallenbeck. | 0.20 |
| 04/02/2007 | LAN | Letter from and to Tim Hallenbeck. | 0.20 |
| 04/03/2007 | LAN | Telephone call from Tim Hallenbeck. | 0.10 |
| 04/04/2007 | LAN | Review revised audit report; telephone call to Dennis Soares. | 0.60 |
| 04/05/2007 | LAN | Review old files against audit findings. | 0.40 |
| 04/16/2007 | LAN | Review draft audit report against extra hours we knew about and credited regarding 4/05-9/05 hours on Pleasant Grove High School in Elk Grove. | 0.30 |
| 04/17/2007 | LAN | Telephone call from and telephone call to Carlene Marra regarding audit; letters to and letters from Kelly Luna. | 0.20 |
| 04/20/2007 | LAN | Review audit findings and my notes regarding additional hours found on the Pleasant Grove High School job in 2005 and Kelly Luna's note regarding errors in draft audit report; letter to Tim Hallenbeck. | 0.60 |
| 06/06/2007 | LAN | Letters from and letters to Tim Hallenbeck. | 0.20 |
| 06/28/2007 | LAN | Review audit report; letter to Tim Hallenbeck. | 0.40 |
| 07/05/2007 | LAN | Review letter from Tim Hallenbeck to employer | |

|            |     |                                                                                                           | Hours |
|------------|-----|-----------------------------------------------------------------------------------------------------------|-------|
|            |     | and calendar response.                                                                                    | 0.10  |
| 07/17/2007 | LAN | Telephone call to employer; review audit and letter to Tim Hallenbeck; letter from Tim Hallenbeck.        | 0.40  |
| 07/19/2007 | LAN | Review revised audit and calendar response from employer; telephone call from Dennis Soares.              | 0.30  |
| 10/22/2007 | LAN | Draft complaint for audit shortage; telephone call from and telephone call to Dennis Soares; letter to Tim Hallenbeck. | 1.00  |
| 10/23/2007 | LAN | Draft audit money complaint.                                                                              | 0.30  |
| 10/30/2007 | LAN | Review letter from employer to Lindquist regarding audit and letter to Dennis Soares regarding same.      | 0.30  |
| 10/31/2007 | LAN | Telephone call from Dennis Soares regarding audit in response to employer's letter.                       | 0.30  |
| 11/01/2007 | LAN | Draft letter to employer regarding audit.                                                                 | 0.30  |
| 11/02/2007 | LAN | Review and revise letter to employer regarding audit.                                                     | 0.10  |
| 11/06/2007 | LAN | Telephone call from Tim Hallenbeck.                                                                        | 0.10  |
| 02/14/2008 | LAN | Conference with Dennis Soares and Linda Rossman to go over employer's response to audit shortage; letter to Tim Hallenbeck regarding; revisions to make to audit report for settlement purposes. | 2.70  |
| 02/19/2008 | LAN | Telephone call from and telephone call to Tim Hallenbeck.                                                  | 0.10  |
| 02/20/2008 | LAN | Telephone call from Tim Hallenbeck; draft letter to employer.                                             | 0.30  |
| 02/22/2008 | LAN | Review revised audit.                                                                                      | 0.20  |
| 03/25/2008 | LAN | Letter from and to Tim Hallenbeck.                                                                         | 0.20  |
| 04/21/2008 | LAN | Revise draft complaint based on revised audit.                                                            | 0.20  |
| 04/22/2008 | LAN | Telephone call from employer; proofread and correct summons and complaint.                                | 0.40  |
| 04/24/2008 | LAN | Telephone call from and telephone call to Tim                                                             |       |

Image Landscape Main

Fees and Costs

|            |     |                                                                                                                           | Hours |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------|-------|
|            |     | Hallenbeck; review and calendar court dates on the audit money complaint.                                                 | 0.40  |
| 05/06/2008 | DSC | Review order from court regarding electronic filing.                                                                      | 0.10  |
| 05/12/2008 | DSC | Review proof of service, prepare to serve documents on employer by mail.                                                  | 0.50  |
| 05/13/2008 | DSC | Draft letter to Image regarding service of initial pleadings.                                                            | 0.30  |
| 05/14/2008 | DSC | Review proof of service from process server and prepare proof of service of summons and complaint for filing.            | 0.30  |
| 05/15/2008 | DSC | Review and respond to letter from employer regarding audit, e-mails to and from Cathy Gonzalo.                           | 0.40  |
| 05/28/2008 | DSC | Review letter from and draft letter to employer; letters to Dennis Soares and Tim Hallenbeck.                           | 0.40  |
| 06/03/2008 | LAN | Telephone call to employer; letter to Tim Hallenbeck.                                                                     | 0.20  |
| 06/25/2008 | LAN | Draft request to enter default and declaration in support regarding the audit money complaint.                          | 0.30  |
| 07/01/2008 | LAN | Letter from Tim Hallenbeck with revised audit report; letter to employer; draft an amended complaint.                   | 0.70  |
| 07/02/2008 | LAN | Telephone call from, telephone call to and letter to Tim Hallenbeck.                                                     | 0.20  |
| 07/03/2008 | LAN | Review and revise amended complaint.                                                                                     | 1.00  |
| 07/07/2008 | LAN | Draft, review and revise Case Management Conference statement (.3); assist Alice Watson in e-filing the amended complaint (.3 - no charge). | 0.30  |
| 07/14/2008 | LAN | Proof Case Management Conference statement.                                                                              | 0.20  |
| 07/23/2008 | LAN | Draft request for entry of default and declaration in support thereof; note to Alice Watson to call court clerk regarding rescheduling the Case Management Conference. | 1.20  |
| 08/04/2008 | LAN | Draft letter to employer regarding default under                                                                        |       |

```
                                                                    Page:  4
Image Landscape Main                                        August 27, 2008
                                         Client Matter Number   lan16-002H
                                               Invoice Number       11007

   Fees and Costs
```

|            |     |                                                                                                                                                                                                         | Hours |          |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|----------|
|            |     | judgment; review and revise, proof and sign declaration in support of entry of default; proof and sign request for entry of default.                                                                     | 0.40  |          |
| 08/05/2008 | LAN | Review and revise; proof and sign letter to employer regarding default on judgment.                                                                                                                      | 0.20  |          |
| 08/07/2008 | LAN | Review clerk's entry of default;  draft notice of motion and motion for default judgment; conference with Mary McLoughlin regarding fees and costs on action for request for fees and costs.              | 0.50  |          |
| 08/11/2008 | LAN | Draft memorandum of points and authorities; review and revise notice of motion; email to Tim Hallenbeck; draft my declaration in support of default judgment; review and revise Tim Hallenbeck's declaration in support of default judgment. | 0.90  |          |
| 08/13/2008 | LAN | Review and revise Tim Hallenbeck's declaration for the motion for default judgment and ask Eric Schad to revise the paragraph in my declaration to add the proper trust agreement provisions and provide attachments. | 0.30  |          |
| 08/14/2008 | ES  | Office work regarding exhibits to Nord Declaration regarding Amounts Owed.                                                                                                                                | 0.70  |          |
|            | LAN | Review and revise my declaration and Tim Hallenbeck's declaration in support of the motion for default judgment.                                                                                          | 0.30  |          |
| 08/22/2008 | LAN | Scan Tim Hallenbeck's declaration and email it to him with cover letter.                                                                                                                                 | 0.20  |          |
| 08/27/2008 | LAN | Letter from Tim Hallenbeck; proofread and correct Tim Hallenbeck's declaration; review and revise my declaration in support of the default judgment.                                                      | 0.90  |          |
|            |     | Subtotal for Fees                                                                                                                                                                                        | 22.10 | 5,209.50 |

```
                            Summary
     Timekeeper                Hours       Rate        Total
     Lori A. Nord              19.40    $240.00    $4,656.00
     Diane Sidd-Champion        2.00     240.00       480.00
     Eric Schad                 0.70     105.00        73.50
```

**Expenses**

```
04/23/2008      U.S. District Court - filing fee.                     350.00
```

Image Landscape Main

Client Matter Number  lan16-002H
Invoice Number    11007

Fees and Costs

| | | |
|---|---|---|
| 04/24/2008 | Deliveries to and from US District Court. | 26.40 |
| 05/06/2008 | Wheels of Justice - process service on Brian Masunaga. | 75.00 |
| 05/13/2008 | Delivery to US District Court. | 13.20 |
| 05/15/2008 | Delivery to US District Court. | 13.20 |
| | Subtotal for Expenses | 477.80 |
| | Current Fees and Expenses | 5,687.30 |
| | **SUBTOTAL FOR THIS MATTER** | $5,687.30 |